**Salem**

WILLIAM TIMOTHY KEMPH

V.

COMMONWEALTH OF VIRIGNIA

No. 0323-92-3

Decided November 23, 1993

COUNSEL

William H. Cleaveland (Rider, Thomas, Cleaveland, Ferris & Eakin, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—On retrial following a mistrial, a jury convicted William Timothy Kemph (Kemph) on one count of possession of methamphetamine with intent to distribute. On appeal, Kemph asserts that his retrial following mistrial was barred by the double jeopardy provision of the Fifth Amendment as applied to the states through the Fourteenth Amendment. Kemph argues that the mistrial resulted from intentional misconduct by the Commonwealth's Attorney, thereby placing the retrial within the double jeopardy bar. Kemph also challenges the trial judge's refusal to allow additional testimony during a pre-trial hearing to determine the double jeopardy implications and the judge's refusal to recuse himself from making that determination. Because we find that the prosecutor's conduct in Kemph's first trial did not rise to the level of intentional misconduct and that the trial judge acted properly in making that determination, we affirm Kemph's conviction.

## I. FACTUAL BACKGROUND

In this appeal, Kemph does not challenge the sufficiency of the evidence. Accordingly, we recount only those facts relevant to the appeal and present them in the light most favorable to the Commonwealth. *Traverso v. Commonwealth,* 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). In December 1991, the police observed Kemph and another man leaving a four-door pickup truck towing a horse trailer. As the two men crossed the street toward a closed business, Kemph was carrying a brown paper bag from which a triple beam scale protruded. After Kemph and his companion entered the building, officers approached and directed them to place their hands against the wall. Kemph reached inside his coat and refused to remove his hand. Upon further command from the police, Kemph removed his hand and in the same motion dropped a plastic bag between his feet. The bag contained 24.5 grams of methamphetamine and cutting agent.

In Kemph's first trial, the defense called Donald Foutz as a character witness. On direct examination, Foutz testified as to Kemph's reputation for truth and veracity. The Commonwealth's Attorney then asked the court for leave "to make an argument out of the absence (sic) of the jury, so we won't step on anything here." Out of the presence of the jury, the attorneys and the judge discussed the Commonwealth's proposed cross-examination of Foutz. The trial judge ruled that the witness' testimony had put Kemph's character in issue and that the Commonwealth had the right to cross-examine and impeach on that issue. The prosecutor asked the court if he could ask the witness the following questions:

1. If the witness has heard that Kemph was an admitted user of methamphetamine;

2. Whether it would change the witness' opinion if Kemph has admitted to using methamphetamine on at least one occasion;

3. Whether it would affect the witness' opinion or has the witness heard that Kemph had $1,100 worth of methamphetamine drop from his hand in Vinton, and whether the witness has heard that Kemph had marijuana in his pocket when arrested;

4. Whether the witness has heard that Kemph is a major methamphetamine distributor from Virginia Beach;

5. Whether the witness has heard that Kemph is a supplier of methamphetamine from Virginia Beach;

6. Whether the witness has heard that Kemph has sold marijuana in the past.

The trial judge refused all of these proffered questions.

The following exchange then occurred:

By the Court: What you want to do is you want to tell the jury that he has—this man has a record.

By [Prosecutor]: No, sir, I don't. I am not saying are you aware that [he] has been convicted of, no. I'm not saying that, no.

By the Court: See, I think you're permitted to do that.

By [Prosecutor]: Well, then I'll ask that.

Following a discussion on the remoteness of the prior crimes, the trial judge ruled, "I do not find [the evidence of prior crimes] to be so remote that it [would] not have . . . some bearing on . . . what the witness may have thought the reputation was. So I will permit [the prosecutor] to ask [Foutz] if he had heard of these convictions for these drug violations at the time, whatever they were alleged to [be]." When defense counsel objected and asserted that the Commonwealth could not discuss the details of the prior offenses, the trial judge said, "I don't think it's limited to just the type of felony."

The trial judge then stated, "I will permit this part of the questioning to go," and asked the prosecutor if "there [is] anything else you're going to ask him in regard to that?" The prosecutor responded that he would "just ask him about the two drug related offenses." The trial judge advised the prosecutor to be sure to ask his questions in terms of whether the witness has heard about them.

When Foutz returned to the stand, the prosecutor asked whether Foutz had heard that Kemph had been convicted twice in the City of Chesapeake for selling marijuana. Defense counsel objected and asked for a mistrial. Foutz indicated that he had not heard this. The prosecutor next asked whether the witness had heard that Kemph had been *charged* with distribution of phencyclidine; again, defense coun-

sel objected. The prosecutor responded that he had a good faith basis for the question. The prosecutor then asked the witness whether he had heard that Kemph had been convicted of possession of phencyclidine. The witness responded no. After further questioning, cross-examination was concluded and defense counsel redirected the witness. When the jury had retired to the jury room, the court recognized that defense counsel had made a motion for a mistrial. Defense counsel stated:

> I need to ask for the mistrial on the basis of the fact that my understanding of the Court's ruling was that he can ask about the convictions for drug offenses and give the dates. [The prosecutor] elicited information about the dates and times and types of offenses, drug offenses, including possession and distribution, and types of drugs. I think that goes far beyond what was ever intended to test the validity of a person's statement about what they have indicated as the defendant's reputation for truth and veracity in the community.

The prosecutor responded that he had asked "specific instances of misconduct." He then stated, "I have a good faith basis, I have a CCRE right here that says charged with distribution of phencyclidine, felony, convicted; possession of phencyclidine, misdemeanor; distribution of marijuana, felony, conviction; distribution of marijuana, felony."

The trial judge granted the mistrial, stating "I do not find any misconduct on [the prosecutor's] part; I don't think he's done anything wrong." Defense counsel responded, "I understand that." The trial judge stated he had "gotten deeper and deeper into unclear areas of admissibility of evidence." He continued:

> I think that the court has, in this instance, has failed to set down a proper guideline for the admissibility of all this evidence and because of that it has caused the attorneys and the courts substantial problems with it.

> So, under the circumstances, I have decided that the better position to take is to grant the defendant's mistrial and order that all of these issues that we have been wrestling with be briefed and that we have some substantial pretrial arguments and hearings with regard to the limitations on [the prosecutor's] evidence and with regard to how the defendant's character can be presented.

The Commonwealth elected to re-try Kemph. At the beginning of his second trial on December 10, 1992, Kemph moved to dismiss the indictment on double jeopardy grounds, asked the judge to recuse himself from determining the double jeopardy issue, and requested a hearing to present evidence on the prosecutor's intent. The judge ruled that he was the appropriate fact finder and that he could determine the double jeopardy issue without hearing additional evidence. The trial judge stated that *"my ruling was so nebulous that I don't see how [the prosecutor] could have possibly understood what my ruling was, because I wasn't sure what my ruling was."* The court found that the prosecutor's actions were not intentional, and that the prosecutor had acted in good faith.

## II. STANDARD FOR APPLYING DOUBLE JEOPARDY TO PROSECUTORIAL MISCONDUCT

The United States Supreme Court has held that jeopardy attaches in a criminal case once a defendant is placed on trial before the trier of the facts. *United States v. Jorn,* 400 U.S. 470, 479 (1971). However, in *Wade v. Hunter,* 336 U.S. 684 (1949), the Court said:

> The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again . . . . What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

*Id.* at 688-89.

Thus, although jeopardy attaches in a criminal case once the jury is sworn, there are circumstances in which the trial court may abort the proceedings and the defendant can be re-tried without violating the double jeopardy clause of the Fifth Amendment. When the de-

fendant's actions cause the mistrial, or when a mistrial is declared at the defendant's behest, he is not permitted to claim the protection of the double jeopardy bar. *United States v. Dinitz,* 424 U.S. 600, 611 (1976). However, when a defendant requests a mistrial because of intentional prosecutorial misconduct, the double jeopardy bar will apply. *Oregon v. Kennedy,* 456 U.S. 667, 676 (1982). The Commonwealth cannot use its own misconduct to gain an advantage any more than can the defendant.

■ "The standard applied in *Kennedy* is that prosecutorial conduct, even if viewed as [harassing] or overreaching and sufficient to justify a mistrial, does not bar retrial absent proof of intent on the part of the prosecutor to subvert the protection afforded by the double jeopardy clause." *MacKenzie v. Commonwealth,* 8 Va. App. 236, 240, 380 S.E.2d 173, 175 (1989).

Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Oregon v. Kennedy,* 456 U. S. at 676.

### III. SUFFICIENCY OF THE RECORD TO DETERMINE PROSECUTORIAL MISCONDUCT

We look first to the issue of whether the trial court erred in refusing to hear additional evidence before ruling on Kemph's motion to bar his retrial. Kemph relies on a statement from the Sixth Circuit to the effect that a defendant can never demonstrate prosecutorial bad faith if the trial court restricts its inquiry to the record made at the aborted trial. *United States v. Wilson,* 534 F.2d 76, 82 (6th Cir. 1976). We believe reliance on *Wilson* is misplaced. In *Wilson,* the appellate court specifically referred to the "scant trial record" of the first trial. *Id.* at 81. Here, we have no dearth of evidence as to the events that led up to the mistrial. The record of the first trial contains the finding of the judge that the prosecutor had done nothing wrong, a finding in which Kemph's counsel acquiesced. We do not see how additional findings of fact would have benefitted the trial court's determination of the issue.

## IV. RECUSAL ISSUE

Kemph also asserts that the trial judge should have recused himself because he "would naturally assume some responsibility for the mistrial." The import of this argument seems to be that because the trial judge recognized that the lack of clarity in his ruling, rather than intentional misconduct by the prosecutor, caused the mistrial, he was not competent to determine the issue.

■ The trial judge determined that he was competent to make an unbiased determination and that no further evidence was required to determine the issue of prosecutorial misconduct. We see no reason why a judge, fully aware of all facts relevant to an issue, should recuse himself from determining that issue simply because he may be called upon to question his own prior judgment or because he is familiar with the parties and the issues in question. *See Helen W. v. Fairfax County Dep't of Human Dev.,* 12 Va. App. 877, 888, 407 S.E.2d 25, 31-32 (1991); *Terrell v. Commonwealth,* 12 Va. App. 285, 293, 403 S.E.2d 387, 391 (1991). Here, the candid concession of the trial judge that his ruling lacked clarity speaks well of his ability to remain unbiased.

## V. NO PROFFER OF EVIDENCE MADE

Kemph asserts in his brief that the trial court erred in refusing to permit a proffer of additional evidence concerning the prosecutor's conduct. *Smith v. Hylton,* 14 Va. App. 354, 358, 416 S.E.2d 712, 715 (1992). Contrary to Kemph's assertion, the record does not reflect that any proffer was refused; rather, the court merely refused Kemph's request for a separate hearing. Because the defendant never requested an opportunity to proffer the rejected testimony, his reference to *Smith* is misplaced. It is clear from the full context of *Smith* that the proffer must be affirmatively made, not merely implied. 14 Va. App. at 357-58, 416 S.E.2d at 715; *see also Speller v. Commonwealth,* 2 Va. App. 437, 440, 345 S.E.2d 542, 545 (1986).

## VI. PROSECUTORIAL MISCONDUCT IN KEMPH'S CASE

Having determined that the trial court properly considered the issue of prosecutorial misconduct, we now review its resolution of that issue. The trial judge admitted that he had rendered a nebulous ruling. *Cf. MacKenzie v. Commonwealth,* 8 Va. App. 236, 240, 380 S.E.2d 173, 175 (1989) (holding that where prosecutor made improper remarks in opening statement after being warned that these remarks

were unacceptable, trial court's finding that prosecutor did not exercise good judgment was supported by the evidence). The prosecutor, in asking Foutz about charges that had resulted in a conviction, could have reasonably believed that he was acting within the judge's instructions. The prosecutor also opposed the granting of a mistrial, suggesting that he lacked a purposeful intent to bring about the mistrial. *See United States v. Nichols,* 977 F.2d 972, 975 (5th Cir. 1992) (if there is no evidence that the prosecutor intended to terminate the first trial, there is no double jeopardy bar), *cert. denied,* 114 S. Ct. 106 (1993).

■ The record fully supports the trial court's finding that the prosecutor's action was not intentional and that he acted in good faith. "The court's finding concerning the prosecutor's intent is, of course, a factual one which we must accept unless it is clearly erroneous." *United States v. Borromeo,* 954 F.2d 245, 247 (4th Cir.), *cert. denied,* 112 S. Ct. 3012 (1992). The trial court properly denied the motion to dismiss under double jeopardy.[1]

For the foregoing reasons, the conviction appealed from is

*Affirmed.*

Elder, J., and Fitzpatrick, J., concurred.

---

[1] Kemph asserts for the first time on appeal that the double jeopardy clause of the Virginia constitution protects him from retrial even if the United States Constitution does not. This claim is barred by Rule 5A:18; nonetheless, as this Court has ruled that resolution of such a double jeopardy claim is controlled by *Oregon v. Kennedy, MacKenzie,* 8 Va. App. at 239, 308 S.E.2d at 175, his argument lacks merit.