439 S.E.2d 622 (1994)
Earl ROBINSON,
v.
COMMONWEALTH of Virginia.
Record No. 1002-92-2.
Court of Appeals of Virginia.
January 11, 1994.
Rehearing En Banc Granted March 24, 1994.
*623 Joseph W. Kaestner (Kaestner & Associates, on briefs), for appellant.
Robert B. Condon, Asst. Atty. Gen. (Stephen D. Rosenthal, Atty. Gen., on brief), for appellee.
Present: MOON, C.J., and BENTON and FITZPATRICK, JJ.
FITZPATRICK, Judge.
In a prior opinion, a panel of this Court reversed Earl Robinson's convictions for first degree murder and use of a firearm in the commission of murder. See Robinson v. Commonwealth, 13 Va.App. 574, 413 S.E.2d 885 (1992). The panel held "that a manifest probability exists that the prosecutor's repeated questions, which interjected irrelevant and inflammatory implications about Robinson into the case, prejudiced the jury and denied Robinson a fair trial." Id. at 575, 413 S.E.2d at 885. On remand to the circuit court, Robinson moved to dismiss the charges on the ground that his further prosecution was barred by the double jeopardy clauses of the United States and the Virginia constitutions. After a hearing which included testimony from the Commonwealth's Attorney for the City of Richmond, the prosecutor in the first trial, the trial judge denied the motion. Robinson was again tried and convicted of a lesser offense of second degree murder and the use of a firearm in the commission of the murder. In this appeal, Robinson contends that the trial judge erred in denying his motion to dismiss his charges on double jeopardy grounds. We disagree and affirm the convictions.
"`The Double Jeopardy Clause is not an absolute bar to successive trials. The general rule is that [it] does not bar reprosecution of a defendant whose conviction is overturned on appeal,'" Cantrell v. Commonwealth, 7 Va.App. 269, 279, 373 S.E.2d 328, 332 (1988), cert. denied, 496 U.S. 911, 110 S.Ct. 2600, 110 L.Ed.2d 280 (1990) (quoting Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984)), save in the limited instance where reversal is required because of insufficient evidence. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); see also United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). "[P]rosecutorial conduct, even if viewed as harassment or overreaching and sufficient to justify a mistrial, does not bar retrial absent proof of intent on the part of the prosecutor to subvert the protections afforded by the double jeopardy clause." MacKenzie v. Commonwealth, 8 Va.App. 236, 240, 380 S.E.2d 173, 175 (1989) (citing Oregon v. Kennedy, 456 U.S. 667, 675-76, 102 S.Ct. 2083, 2089-90, 72 L.Ed.2d 416 (1982)).

Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.
Kennedy, 456 U.S. at 676, 102 S.Ct. at 2090 (emphasis added). In so holding, the Supreme Court noted that this "is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." Id. at 673, 102 S.Ct. at 2088.
The generally accepted purpose for this limited exception is to bar "retrials where `bad-faith conduct by ... [the] prosecutor,' threatens the `[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' *624 the defendant." United States v. Dinitz, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976) (citations omitted). In Kennedy, the Supreme Court made it clear that the exclusive focus should not be on the fact of prosecutorial error or on the impact of such error upon a defendant, but only on the intent of the prosecutor in committing the error.[1]Fields v. State, 96 Md.App. 722, 742, 626 A.2d 1037, 1047 (1993). Accordingly, Robinson, who has the burden of proving that the second prosecution is barred by double jeopardy,[2] must produce sufficient evidence to allow the court to infer "the existence or nonexistence of intent from objective facts and circumstances." Kennedy, 456 U.S. at 675, 102 S.Ct. at 2089.
The trial judge found that "it was [not] intentional on [the prosecutor's] part to get a mistrial." At a hearing on remand, the prosecutor testified concerning the objective facts surrounding the events that caused the mistrial. Evidence was also adduced concerning the prosecutor's expertise and experience. Robinson's evidence consisted of testimony from two experienced criminal trial attorneys who had examined the record in the first trial. In finding that the prosecutor did not intend to cause a mistrial, the trial judge relied upon the prosecutor's representations about his intent, the prosecutor's credibility as a witness and the strength of the Commonwealth's evidence at the first trial.[3] The trial judge, in ruling on Robinson's motion, held:
I think from watching him [the prosecutor] testify, I think he is sincere in his error.... I am convinced that Mr. Morrissey [the prosecutor] is wrong in the law. He did, he has testified that he had six witnesses to testify as to the drug trafficking. I don't know whether they had ever been read in the trial even though he was drug trafficking. I am convinced with Mr. Morrissey, it's the same old thing where lawyers make the other side look as bad as they can and how do they help [their] side? If you can't bring that person and bring the others down to your level? I don't think it was an attempt on his part to get a mistrial. ... I don't believe it was intentional on his part to get a mistrial.
The record shows that the Commonwealth's evidence at the first trial included eyewitness testimony from several witnesses who observed Robinson approach the victim, pull his gun and start shooting. Thereafter, Robinson ran from the scene. The Commonwealth's witnesses all testified that the victim did not have a gun. Robinson admits that he fatally shot the victim. He claimed, however, that the shooting was in self-defense. That defense was seriously undermined by the Commonwealth's witnesses, including testimony elicited from a police officer who had taken a statement from Robinson on the day of the fatal shooting. The officer testified that Robinson, in response to the question, "did anybody else have any weapons," replied:
Yes, sir. I fired and they started running so I don't know what they had. They had to come back and take his [the victim's] gun.
The Commonwealth attorney then inquired of the officer:
Now, had you ever, during that meeting, had you ever discussed the fact whether or not the victim, William Jordan, had a gun there at his body or did not have a gun?
The officer answered: "No, sir."
We conclude that the judge, who was the original trial judge in this matter, properly considered the relative strengths and weaknesses of each party's case in the first trial, the credibility of the witnesses at the subsequent hearing on the double jeopardy plea, and other attendant circumstances. "[T]he question of whether prosecutorial misconduct *625 was intended to provoke the defendant into seeking a mistrial is a factual question that is appropriately decided by the trial court." State v. Diaz, 521 A.2d 129, 133 (R.I.1987) (holding prosecutor's significant failure to disclose important discovery information required reversal of murder conviction, but did not bar retrial). The prosecutor's intent is a question of fact for the trial court to resolve.[4] In order to grant Robinson's plea of double jeopardy, the facts must warrant the conclusion that there was an instigative intention to subvert the protections afforded by the Double Jeopardy Clause. Williams v. State, 207 Ga.App. 124, 125, 427 S.E.2d 59, 60 (1993) (citations omitted).
The only explanation that the prosecutor offered for injecting clearly improper issues at the first trial was his belief that, for impeachment purposes, the jury should be informed of Robinson's alleged "reputation for trafficking narcotics," and that he believed such information was admissible:
Under the theory that [defense counsel] opened the door, it would be perhaps a collateral matter, but [defense counsel] opened the door to what [Robinson] was doing over there [at the scene of the shooting] and I was able to pursue it.
As explained in our prior opinion, the prosecutor's conduct was highly improper; therefore, we reversed the conviction and remanded the case. Without the requisite intent, however, gross prosecutorial misconduct will not satisfy the exception set forth in Kennedy.
Many of the prosecutorial errors that trigger mistrials and reversals consist of grossly negligent and even deliberate conduct. The law has never looked upon the declaration of a mistrial and the appellate reversal as mild slaps upon the wrist, but has treated them as rigorous means for redressing even grossly negligent and deliberate misconduct. ... [O]ur constitutional law has always permitted a retrial following such mistrial or reversal.... When the prosecution suffers a mistrial or an appellate reversal, it is considered to have suffered a stern rebuke in terms of lost days, lost dollars, lost resources of many varieties and the lost opportunity to make the conviction stick. It is only in the Machiavellian situation where the prosecutor deliberately courts a mistrial that the normal sanctions are self-evidently inadequate. A scheming prosecutor cannot be rewarded by being handed the very thing toward which he connived. For all other error, it is certainly not a condonation of misconduct simply to determine that, among the arsenal of sanctions, the sanction for such misconduct is a sanction other than the double jeopardy bar.
Fields, 626 A.2d at 1048 (citations omitted).
Other states have similarly held that serious prosecutorial misconduct, while justifying a mistrial or reversal of a conviction, does not necessarily satisfy the standard set forth in Kennedy. See, e.g., Wheat v. State, 599 So.2d 963, 965 (Miss.1992) (impermissible remarks made during closing argument in sentencing phase of capital murder case required reversal, but did not bar retrial); Pruitt v. State, 829 P.2d 1197, 1200 (Alaska Ct.App.1992) (prosecutor's attempt to impeach defendant during cross-examination that "clearly and inexcusably violated [the rules of evidence]" justified mistrial, but did not bar retrial); Commonwealth v. Moose, 424 Pa.Super. 579, 623 A.2d 831, 837 (1993) (prosecutor's serious misrepresentation to court and violation of court's discovery order which caused state supreme court to refer *626 prosecutor's conduct to state disciplinary board, did not bar retrial after reversal); State v. Hamala, 73 Haw. 289, 834 P.2d 275, 277 (1992) (testimony regarding prior bad acts elicited by prosecutor was improper and highly prejudicial warranting reversal of conviction, but such conduct did not bar retrial). As the United States Supreme Court explained: "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).
Because we find that the trial court's ruling as to the prosecutor's intent was not clearly erroneous, we affirm the conviction.
Affirmed.
BENTON, Judge, dissenting.
The Double Jeopardy Clause of the Fifth Amendment commands that no person shall "be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Double Jeopardy Clause ... [, thus,] protects a criminal defendant from repeated prosecutions for the same offense." Oregon v. Kennedy, 456 U.S. 667, 671, 102 S.Ct. 2083, 2086, 72 L.Ed.2d 416 (1982).
In Kennedy, the plurality opinion of the Supreme Court stated that prosecutorial harassment or overreaching sufficient to justify a mistrial bars retrial if the evidence proves that the prosecutor intended to subvert the protections afforded by the Double Jeopardy Clause. Id. at 675-76, 102 S.Ct. at 2089-90. The plurality opinion further stated that "where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial[,] ... a defendant [may] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id. at 676, 102 S.Ct. at 2090. In addition, the plurality opinion observed that "the existence or nonexistence of intent [must be inferred] from objective facts and circumstances." Id. at 675, 102 S.Ct. at 2089. Because I believe that the objective facts compel the conclusion that the Commonwealth's attorney intended to "goad" the defendant into moving for a mistrial, I dissent.
Although the trial judge found that "it was [not] intentional on [the prosecutor's] part to get a mistrial," the objective facts and circumstances do not support that finding. The objective facts and circumstances can be gleaned from the events that occurred during the first trial and from the hearing on remand. As detailed in Robinson v. Commonwealth, 13 Va.App. 574, 576-79, 413 S.E.2d 885, 886-88 (1992), at the first trial, the prosecutor repeatedly interjected evidence of alleged criminal activity unrelated to the offense being tried. The prosecutor alleged that criminal offenses unrelated to the issues then being tried were committed by Robinson, Robinson's brother, and one of Robinson's witnesses. Robinson's counsel objected each time the prosecutor asked a series of improper questions and the trial judge sustained the objections. The record reveals that Robinson's counsel objected to four such incidents and moved for mistrials. The trial judge instructed the jury to disregard the testimony, twice denied Robinson's motions for a mistrial, and admonished the prosecutor to cease the improper line of questioning. Notwithstanding these events, the prosecutor continued to ask questions framed to elicit the testimony regarding unrelated, alleged criminal activity.
Significantly, on remand at the evidentiary hearing, where the trial judge considered Robinson's motion to dismiss the charges because of the Double Jeopardy violation, the prosecutor testified concerning the facts surrounding the events that caused this Court on appeal to hold that the trial judge erred in refusing to grant the mistrial. The prosecutor testified that if he had been the defense attorney at the first trial, he "would have done the same thing"objected and moved for a mistrial. He testified that he was aware that his questions would invite such actions and motions for a mistrial. Thus, unlike Kennedy, where the prosecutor was surprised by the motion for a mistrial, see 456 U.S. at 680, 102 S.Ct. at 2092 (Powell, J., concurring), in this case the prosecutor acted deliberately with the avowed knowledge that his conduct would cause Robinson's counsel to move for a mistrial.
At that same evidentiary hearing, evidence was also adduced concerning the prosecutor's *627 expertise and experience as a litigator. Several witnesses, in addition to the prosecutor himself, testified that the prosecutor was a skilled and experienced trial lawyer. He had formerly been a skilled defense counsel and was highly capable of understanding the rules of practice and the mechanics of a trial. Although the prosecutor claimed he did not subjectively intend to cause a mistrial, he also testified that he knew his questions would elicit an objection and motion for mistrial. When he testified that as a defense attorney he would have made those same motions and objections, he did not indicate that he would have made those motions frivolously. Indeed, counsel with even minimal experience would have known after the first instance, when the trial judge instructed the jury to disregard the testimony, that the inquiry was forbidden. The trial judge, in finding that the prosecutor did not intend to cause a mistrial, erroneously relied upon the prosecutor's representations about his subjective intent rather than the objective factors that existed at the time of the trial.
The objective facts, manifest on this record, are that the skilled prosecutor repeated the misconduct following continuous objection by defense counsel and rulings by the trial judge sustaining the objections. He did so with the knowledge that his conduct would provoke objections and motions for mistrials.
On the first appeal, this Court characterized the prosecutor's repeated conduct to be a "patent effort through innuendo and insinuation to paint the accused and his witness as drug dealers." Robinson, 13 Va.App. at 579, 413 S.E.2d at 888. The prosecutor's testimony at the evidentiary hearing that he knew that his conduct would cause defense counsel to move for a mistrial establishes "the circumstances under which ... a defendant may invoke the bar of double jeopardy in a second effort to try him ... [because this is one] of those cases in which the conduct giving rise to the ... motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Kennedy, 456 U.S. at 667, 102 S.Ct. at 2089.
Moreover, unlike Kennedy, where only one question constituted overreaching, see 456 U.S. at 680, 102 S.Ct. at 2092 (Powell, J., concurring), the objective facts proved that the prosecutor employed in this case a "sequence of overreaching" conduct after adverse rulings and warnings. See id. The cases that the majority opinion relies upon to deny a bar to retrial are all cases, similar to Kennedy, in which prosecutors engaged in a single, unrepeated instance of misconduct. The objective facts in this case demonstrate, however, that the prosecutor's comment was not a singular instance of improper conduct. "[E]mphasiz[ing] that a courtin considering a double jeopardy motionshould rely primarily upon the objective facts and circumstances of the particular case," Justice Powell, who cast the deciding vote in Kennedy, noted in his concurring opinion that the facts in Kennedy "would have been a close case... if there had been substantial factual evidence of intent beyond the [one improper] question itself." 456 U.S. at 679-80, 102 S.Ct. at 2091-92 (Powell, J., concurring).
In applying Kennedy, other courts have held that a prosecutor's deliberate violation of court's ruling barring other crimes evidence was intentional conduct that barred a retrial because it provoked motion for mistrial. See Beck v. State, 261 Ga. 826, 412 S.E.2d 530 (1992); State v. Laster, 223 Mont. 152, 724 P.2d 721 (1986). Both of those cases involved persistent, improper prosecutorial conduct. The record in this case proved that the prosecutor engaged in a sequence of improper and overreaching conduct more egregious than in those cases.
The trial judge ignored these objective indicia of the prosecutor's intent and relied, instead, solely upon the prosecutor's after-the-fact expression of his subjective state of mind. The inferences that flow from the objective facts and circumstances in the record are strong and unambiguous. The prosecutor's continued improper questioning and lack of surprise at Robinson's counsel's motion for a mistrial lead unerringly to the conclusion that the prosecutor in this case intended to "goad" the defendant into moving for a mistrial. Kennedy, 456 U.S. at 673, 102 S.Ct. at 2088. Moreover, in view of the several objections made by Robinson's counsel and the trial judge's rulings upholding those objections, neither the trial court nor this Court should credit the prosecutor's assertion on remand that he did not subjectively intend to cause a mistrial.
*628 As an explanation for injecting improper issues at the trial, the prosecutor offered his belief that for impeachment purposes, the jury should have been informed of Robinson's alleged "reputation for trafficking narcotics." The issue before the trial judge was the prosecutor's intent, not the prosecutor's motive. Significantly, however, nothing in the record justifies an inference that after the trial judge ruled that the line of questioning was improper, the prosecutor had some proper purpose in mind for continuing the improper questioning. The prosecutor failed to provide an explanation for continuing to inject that matter into the evidence after the trial judge ruled it inadmissible and cautioned the jury not to consider it. Moreover, the trial judge made no findings that addressed the prosecutor's persistent disregard for the trial judge's rulings upholding the objections to the prosecutor's improper questions. These circumstances manifestly compel the use of the "maxim of the law `that a [person] is taken to intend that which he does, or which is the natural and necessary consequence of his own act.'" Jones v. Commonwealth, 141 Va. 471, 479, 126 S.E. 74, 77 (1925). Indeed, the prosecutor can scarcely claim that, although he knew his actions would have a specific consequence, he did not intend that consequence to arise from his action.
In light of the prosecutor's experience and persistent inappropriate conduct, the trial judge's decision was plainly wrong. I would hold that the objective facts and circumstances sufficiently established under the Kennedy standard that the prosecutor intended to goad Robinson's counsel to move for a mistrial.
I would also hold that the repeated improper conduct that the prosecutor continued to engage in despite the trial judge's rulings was conduct that bars retrial because of violation of the provision of the Constitution of Virginia that prohibits putting an accused twice in jeopardy for the same offense. Va. Const. art. I, § 8. On remand from the Supreme Court's decision in Kennedy, the Supreme Court of Oregon held that the double jeopardy clause of the Oregon Constitution was violated:
when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and if the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the [danger of] resulting mistrial or reversal. When this occurs, it is clear that the burden of a second trial is not attributable to the defendant's preference for a new trial over completing the trial infected by an error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force the defendant to such a choice.
State v. Kennedy, 295 Or. 260, 666 P.2d 1316, 1326 (1983). This standard is different than the standard announced by the Kennedy plurality opinion and better protects the right to be free from multiple trials when the record contains proof of improper prosecutorial misconduct. See also Pool v. Superior Court, 139 Ariz. 98, 677 P.2d 261, 271-72 (1984) (Arizona constitutional test different than Kennedy).
For these reasons, I respectfully dissent.

UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT
On January 24, 1994 came the appellant, by court-appointed counsel, and filed a petition praying that the Court set aside the judgment rendered herein on January 11, 1994 and grant a rehearing en banc thereof.
On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on January 11, 1994 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.
The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.
NOTES
[1] In this case, the error and impact of the error are clearly disclosed in the panel's opinion. See Robinson v. Commonwealth, 13 Va.App. 574, 413 S.E.2d 885 (1992).
[2] The burden of proof is on the party pleading double jeopardy. See Low v. Commonwealth, 11 Va.App. 48, 50, 396 S.E.2d 383, 384 (1990); Cooper v. Commonwealth, 13 Va.App. 642, 644, 414 S.E.2d 435, 436 (1992).
[3] The transcript of the first trial was admitted into evidence at the hearing on the double jeopardy plea without objection. In addition, the trial judge in the case at bar was also the presiding judge at Robinson's first jury trial.
[4] As to the appropriate standard of appellate review in this matter, we are guided by the analogous situation where a trial court is required to examine a prosecutor's purpose and intent for making peremptory strikes during the jury selection process. In those cases, we have held as follows:

"Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Batson v. Kentucky, 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69 (1986); accord Hernandez v. New York, 500 U.S. 352, ___ _ ___, 111 S.Ct. 1859, 1868-69, 114 L.Ed.2d 395 (1991); Winfield v. Commonwealth, 14 Va.App. 1049, 1050, 421 S.E.2d 468, 469 (1992) (en banc). "A trial court, unlike an appellate court, has the opportunity to see and hear the actors. Consequently, we consistently have given deference to a trial court's findings ... and we will not disturb those findings on appeal absent a showing of manifest error or abuse of discretion." Faison v. Hudson, 243 Va. 397, 402, 417 S.E.2d 305, 308 (1992).