UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Decker, AtLee and Malveaux
Argued at Richmond, Virginia

DARRYL LAMONT HAWKINS

MEMORANDUM OPINION[*] BY
v.      Record No. 1863-15-2          JUDGE MARY BENNETT MALVEAUX
DECEMBER 20, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Patricia Kelly, Judge

Jean M. McKeen (Tomlin & McKeen, PLLC, on briefs), for
appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Darryl Lamont Hawkins ("appellant") was convicted of promoting or preparing for

dogfighting, in violation of Code § 3.2-6571.  On appeal, appellant argues that:  (1) the court erred

in denying his motion for mistrial; (2) the matter is barred from retrial; and (3) the evidence was

insufficient to support the conviction.  For the following reasons, we reverse and remand the case to

the trial court for such further proceedings in accordance with this opinion.

I.  BACKGROUND

On January 2, 2014, a grand jury indicted appellant for promoting or preparing for

dogfighting, in violation of Code § 3.2-6571.  On March 13, 2014, the trial court held a hearing

on appellant's motions to dismiss for prosecutorial vindictiveness and pre-indictment delay.  The

court denied these motions.  The offense was tried before a jury on June 25, 2014.  On that date,

the trial court granted appellant's motion for a mistrial due to the Commonwealth's failure to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

disclose exculpatory evidence. On August 7, 2014, the trial court held a hearing on appellant's motions to dismiss the indictment for prosecutorial misconduct and for sanctions. The court denied the motions.

A second jury trial for the offense was held on June 17 and 18, 2015. The evidence adduced at trial is as follows. On August 21, 2012, Deputy Rachel Carty, an officer with the animal control division of the Caroline County Sheriff's Office, executed a search warrant at appellant's property.[1] Senior Deputy Richard Samuels, a member of the animal control division of the Spotsylvania County Sheriff's Department and the lead investigator for the Virginia Animal Fighting Task Force, was also present when Deputy Carty executed the search warrant, and he assisted with the investigation.

Deputy Carty seized multiple items from appellant's property: a flirt pole (a training device used to increase the agility and strength of a dog); a spring pole (a training device used to increase a dog's jaw strength); a breeding stand (a device used to breed aggressive female pit bulls); and a bite stick (an object used to force a pit bull to release an item from its mouth). Deputy Carty testified that she had only seen breeding stands used by individuals engaged in the practice of breeding dogs for animal fighting. Carty also found weights in appellant's backyard near where the dogs were kept. Based on her training and experience, Carty noted that weights are used in breeding dogs for fighting, to make the dogs stronger. A toolbox and a cooler with medicine for animals were located in a shed in the backyard, directly in front of the area where the dogs were kept. Carty testified that people engaged in dogfighting carry medicines in a portable box, as fights and training sessions occur in different locations.

Inside the residence, Carty found several dogfighting publications. The publications contained articles, advertisements, and results of dogfights. Carty found an advertisement for

_____

[1] At trial, Deputy Carty was qualified as an expert in the area of dogfighting.

appellant's own pit bulls, stating that they had "Redboy/Jocko" bloodlines. Samuels testified at trial that the "Redboy/Jocko" bloodline was a "proven bloodline in dogfighting" and would be recognizable to someone involved in dogfighting. Carty also found pedigree registrations with the American Dog Breeders Association and the Bonafide Kennel Club in the residence. Samuels noted at trial that the Bonafide Kennel Club was a registry used for dogs bred to fight. He also testified that the American Dog Breeders Association was another registry that at one time only registered fighting dogs but now registers other dogs as well.

Carty was able to determine that appellant's kennel was named "Hit Squad Kennels." During his investigation, Samuels looked through copies of Sporting Dog Journal, a dogfighting publication, and found two entries of dogfighting match results involving Hit Squad Kennel. Samuels noted that the Sporting Dog Journal, copies of which were found at appellant's home, was not available to the public, but rather was an "an underground publication" that could only be purchased by someone known by dogfighters.

There were four dogs on appellant's property when Deputy Carty executed the search warrant, three pit bulls and one cane corso. Carty testified that cane corsos, while not used for dogfighting, can be used as guard dogs for dogs in training to fight. The dogs were seized from the home. Two of the three pit bulls could not be placed in another home due to their "level of aggression."

Jermain Trueheart testified at trial that he had been to two or three dogfights in Caroline County. He saw appellant acting as a referee at these fights. Sometime in late 2008 or 2009, Trueheart and appellant had discussed how to determine which puppy out of a litter would be best to train as a fighting dog. Additionally, appellant told Trueheart that he had dogs of "the best bloodline[s]." Trueheart conceded that he was a convicted felon.

Various members of appellant's family, including his wife, testified on his behalf at trial, all stating that he did not breed dogs for fighting.

Dr. Debra Grissom, a veterinarian, testified that she examined the dogs taken from appellant's home the day that they were seized. She did not observe any scars or wounds on any of the dogs, or any physical evidence of the dogs participating in dogfighting. She acknowledged that "if they're just breeding the dog, then, of course, it wouldn't have wounds."

Appellant testified at trial that he did not know Jermain Trueheart. He denied breeding dogs for dogfighting. Appellant admitted he was a convicted felon.

On the first day of trial, the Commonwealth's Attorney asked appellant's wife on cross-examination if she was scared of him due to previous protective orders and criminal charges she had taken out against him. Appellant objected and moved for a mistrial, which the trial court took under advisement. Appellant renewed his motion for a mistrial based on this questioning prior to the commencement of the second day of trial and at the close of all evidence. The Commonwealth's Attorney referenced appellant's prior charges in his closing statement, and these remarks were objected to by appellant. The trial court continued to take the motion for a mistrial under advisement.

The jury found appellant guilty of Code § 3.2-6571 and sentenced him to four years' imprisonment. At the sentencing hearing, the trial court heard argument on the motion for a mistrial, which it denied. The court imposed the jury's recommended sentence.

## II. ANALYSIS

### A. Motion for Mistrial

Appellant's first assigns error to the trial court's denial of his motion for a mistrial. Appellant contends the Commonwealth's Attorney's questions in his cross-examination of appellant's wife and his remarks during closing argument were so prejudicial as to warrant a

mistrial. In response, the Commonwealth argues that appellant agreed to the curative actions proposed by the trial court and therefore waived any objection on appeal. The Commonwealth also contends that appellant failed to demonstrate that the trial court abused its discretion in denying the motion for a mistrial.

### 1. Cross-Examination

We first examine appellant's argument regarding the Commonwealth's Attorney's cross-examination of appellant's wife, Sharron Hawkins. On cross-examination of Hawkins, the Commonwealth's Attorney asked if she was testifying on her husband's behalf because she was scared of him. Hawkins responded, "Why would I be?" The Commonwealth's Attorney stated, "Well, you've taken out four protective orders against him, you've told the police on five different occasions he's assaulted you, you've told [sic] one occasion he tried . . . to kill you, and you're not – And you have no reason to be scared of him?" Appellant objected, contending that this was collateral information that would only prejudice the jury, and moved for a mistrial. The Commonwealth informed the trial court that there were four protective orders and five assault charges against appellant involving his wife and that the last protective order was issued in 2010. Counsel for appellant argued that impeachment on these offenses did not give "any benefit to the jury to make a decision whether or not he's guilty of this offense." The trial court agreed, but noted that "it's out" and that she did not want the jury to think that these orders were recently issued, so they "need[ed] to clean that up." The trial court ruled that she would not let the underlying assaults into evidence, but that the Commonwealth could read through the dates of the charges to provide that information to the jury. The court asked appellant's counsel if he was "okay with that," to which he responded, "That's fine. Yes."

As the trial court explained her ruling to the Commonwealth's Attorney, counsel for appellant stated that his "position [was] if it happens again, I'm going to be adamantly asking for

- 5 -

the mistrial." Appellant's counsel then stated that he had "no objection to all of your directives to [the Commonwealth's Attorney]."

The trial court asked the Commonwealth's Attorney for the charges, so that she could read them to the jury, and discovered that in addition to the assault charges there were more serious offenses included. The following colloquy between the trial court and counsel for appellant occurred:

> [DEFENSE COUNSEL]: I think this Court should just read the dates. I think it was a good curative, but I don't think the charges themselves –
>
> THE COURT: Well, I don't know how we cannot go into the charges. I agree.
>
> [DEFENSE COUNSEL]: Yeah. That's the only thing that I can think of that would be a curative.
>
> THE COURT: To tell them what they are and what the result was?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: All of them?
>
> [DEFENSE COUNSEL]: Yes, ma'am, I guess so.
>
> THE COURT: And I'll keep the motion for a mistrial under advisement.

The trial court then read to the jury all of the charges, including: two destruction of property charges, both in 2002; displaying or threatening of a firearm, in 2002; attempted murder of Sharron Hawkins, in 2002; two malicious shootings at an occupied motor vehicle, one in 2002 and one in 2009; and three assaults, in 2003, 2008, and 2010. The trial court also told the jury that appellant had been found not guilty of all of these offenses. The trial court further informed the jury that four emergency protective orders against appellant were issued, in 2002, 2003, 2008, and 2010. The trial court asked the Commonwealth's Attorney if he wanted to admit the documents relating to the charges, and he responded affirmatively. Counsel for appellant told

- 6 -

the trial court, "That's fine. I have no objection to them coming in . . . under the previous rulings."

Appellant contends that the Commonwealth's question involving his prior charges and the trial court's subsequent reading of the charges to the jury was so prejudicial as to require a mistrial. However, examining this part of the record in total, we find that appellant's acquiescence to the trial court's attempt to provide a curative action has waived any argument regarding a mistrial concerning these actions.[2]

Appellant is now unable to challenge the Commonwealth's Attorney's question listing his prior offenses because he agreed to the action taken by the trial court after his objection and motion for a mistrial. "[T]he defendant, having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position." Manns v. Commonwealth, 13 Va. App. 677, 679-80, 414 S.E.2d 613, 615 (1992) (quoting Clark v. Commonwealth, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979)). Appellant's counsel affirmatively agreed with the court on how to handle the issue of appellant's prior charges. Appellant's counsel stated that he was "fine" with the trial court's initial ruling, which excluded the assault charges but instructed the Commonwealth's Attorney to read through their corresponding dates to the jury. Although counsel for appellant stated that he would "be adamantly asking for the mistrial" if the subject was brought up again, he directly told the trial court that he had "no objection to all of your directives" to the Commonwealth's Attorney in the reading of the charges. Even after appellant's counsel was informed that the charges involved more serious offenses than assaults

_____

[2] As it is not necessary for the determination of this appeal, we take no position on whether the trial court's actions in this case constituted an actual "curative instruction." We do note that Black's Law Dictionary defines a curative instruction as "[a] court's instruction to the jury to disregard something that should not have happened in court, such as an improper outburst, misconduct by a lawyer, or testimony that flouts an order *in limine*." Curative instruction, Black's Law Dictionary (10th ed. 2014). Here, the court did not instruct the jury to do anything; it merely read a list of appellant's prior charges involving his wife to the jury.

and protective orders, he continued to agree with the trial court's decision to read the charges and dates to the jury. Further, he did not object to the admission of the documents relating to appellant's prior charges.

Because appellant agreed with the actions of the trial court in reading the offenses to the jury, he has waived any grounds for a mistrial based upon the Commonwealth's cross-examination and the court's response to it. Therefore, we do not consider this portion of the record in our analysis of whether a mistrial was warranted in this case.

### 2. Closing Argument

Appellant also argues that the trial court erred in denying the motion for a mistrial due to the Commonwealth Attorney's comments made during closing argument.

Counsel for appellant, in his closing argument, told the jury that it had to be convinced that appellant was guilty of breeding of dogs for fighting beyond a reasonable doubt, not "innuendos that's enough to get you in the door. Sort of like with these things he flashed in front of you, gets you in the door. Remember he was found not guilty on all of these." In his rebuttal closing argument, the Commonwealth's Attorney stated to the jury that appellant was asking

> you to find the defendant not guilty, just like he was found not guilty for assaulting his wife and destroying her property and brandishing a firearm at her and attempting to murder her and shooting at her vehicle and destroying her property and assaulting her and assaulting her and throwing a missile at her vehicle and assaulting her and getting four protective orders, one including her daughter.

Appellant contends that these comments were so prejudicial that they required a mistrial. We agree.

"The decision whether to grant a motion for a mistrial is a matter submitted to the trial court's sound discretion." Lowe v. Cunningham, 268 Va. 268, 272, 601 S.E.2d 628, 630 (2004).

> In a criminal case, when defense counsel makes a motion for a mistrial based on an allegedly prejudicial remark or question by the

- 8 -

> prosecutor, the circuit court must make a factual determination whether a defendant's right to a fair trial has been prejudiced, thereby requiring a new trial. This determination must be made in light of all the circumstances in the case, including whether the jury was given a cautionary instruction regarding any improper remark or question.

Lewis v. Commonwealth, 269 Va. 209, 214, 608 S.E.2d 907, 910 (2005) (citations omitted).

> In cases in which the jury was not given a cautionary instruction . . . we apply an established standard of review. When a circuit court has determined that a defendant's rights have not been prejudiced and has denied his motion for a mistrial, our appellate review is confined to an inquiry whether the circuit court abused its discretion and, thus, was wrong as a matter of law.

Id. "The making of improper statements in argument is reversible error, where such statements are so impressive as to remain in the minds of the jurors and influence their verdict." Kitze v. Commonwealth, 246 Va. 283, 288, 435 S.E.2d 583, 585 (1993) (quoting McLane v. Commonwealth, 202 Va. 197, 205, 116 S.E.2d 274, 281 (1960)).

Here, the Commonwealth's Attorney's closing argument specifically referenced prior charges against appellant that involved his wife. The Commonwealth's Attorney told the jury that appellant was asking them to find him not guilty, "just like he was found not guilty" of the prior charges against him. Unlike his previous reference to these charges, which involved an attempt to demonstrate the wife's bias, this statement was clearly an effort to persuade the jury that appellant was more likely to have committed this crime because of his prior interactions with the criminal justice system. "It is well settled that evidence of other crimes or bad acts of an accused is generally inadmissible in a criminal prosecution." Wilkins v. Commonwealth, 18 Va. App. 293, 297, 443 S.E.2d 440, 443 (1994) (*en banc*). "The purpose of this rule is to prevent confusion of offenses, unfair surprise to the defendant and a suggestion of 'criminal propensity,' thus preserving the 'presumption of innocence.'" Crump v. Commonwealth, 13 Va. App. 286, 289, 411 S.E.2d 238, 240 (1991) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303

S.E.2d 890, 893 (1983)).  The obvious purpose of the Commonwealth's Attorney's statement was to suggest appellant's "criminal propensity," a violation of well-established legal principles regarding evidence of other bad acts or crimes.

Because the Commonwealth's Attorney's conduct was improper, we next consider whether the trial court abused its discretion in denying appellant's mistrial motion.  This question turns on our determination of whether the record shows as a matter of law that appellant's right to a fair trial was prejudiced by the Commonwealth's Attorney's actions.

In this case, the Commonwealth's Attorney told the jury that appellant was asking them to find him not guilty, like the prior occasions where he was found not guilty.  The implication of this statement was that the jury should not let appellant go unpunished for another offense.  After hearing this remark, the jury could have disregarded any doubt concerning appellant's guilt so as to not let him "get away with" another crime.  See Kitze, 246 Va. at 289, 435 S.E.2d at 586 (holding denial of mistrial was error where Commonwealth's attorney told the jury in guilt phase of trial if they found that defendant "committed the offenses because of an irresistible impulse, then he would be set free, and [Commonwealth's attorney] implied that the jurors, as protectors of the community, would have failed in their responsibility to protect the community").  Examining the totality of the circumstances, we find the improper comment made during the closing argument was "so impressive as to remain in the minds of the jurors and influence their verdict."  Id. at 288, 435 S.E.2d at 585.  Therefore, we hold that it was an abuse of discretion for the trial court to deny appellant's motion for a mistrial.

Although the trial court erred in not granting appellant's motion for a mistrial, we will not reverse on this basis if we determine that this error was harmless.  Code § 8.01-678 makes "harmless-error review required in *all* cases."  Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990); see Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231

- 10 -

(1926) (holding that the harmless error statute "puts a limitation on the powers of this court to reverse the judgment of the trial court—a limitation which we must consider on every application for an appeal and on the hearing of every case submitted to our judgment"). Under this standard, a non-constitutional error in a criminal case is harmless "[i]f, when all is said and done, . . . the error did not influence the jury, or had but slight effect.'" Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (quoting Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 458 (2005)). Stated another way, if "the alleged error substantially influenced" the fact finder, the error is not harmless. Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).

Here, the Commonwealth has offered no argument that the error was harmless, and we find no basis for such a holding. We have determined that the trial court erred in not granting the mistrial because the improper comment during the closing argument was so impressive as to remain in the minds of the jurors and influence their verdict. Based upon the same reasoning, we cannot say that the error did not influence the jury, or had little effect. The Commonwealth's Attorney's remark, intended to suggest appellant's propensity for crime, could reasonably have influenced the jury in making their determination. Therefore, the error was not harmless and we reverse appellant's conviction.

### B. Commonwealth's Attorney's Conduct Bars Retrial

Appellant's second assignment of error asserts that the Commonwealth is barred from retrial in this case because the Commonwealth's Attorney's conduct was intended to "goad" appellant into moving for a mistrial.

> The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689 (1949). The Double Jeopardy Clause,

- 11 -

however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding.

Oregon v. Kennedy, 456 U.S. 667, 671-72 (1982).  Generally, "when a mistrial is declared at the defendant's behest, he is not permitted to claim the protection of the double jeopardy bar.  However, when a defendant requests a mistrial because of intentional prosecutorial misconduct, the double jeopardy bar will apply."  Kemph v. Commonwealth, 17 Va. App. 335, 341, 437 S.E.2d 210, 213 (1993) (citation omitted).  This exception is a narrow one and is applicable "*[o]nly* where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial."  Robinson v. Commonwealth, 17 Va. App. 551, 553, 439 S.E.2d 622, 623 (quoting Kennedy, 456 U.S. at 676), aff'd on reh'g en banc, 18 Va. App. 814, 447 S.E.2d 542 (1994).  "The standard applied in Kennedy is that prosecutorial conduct, even if viewed as harassment or overreaching and sufficient to justify a mistrial, does not bar retrial absent proof of intent on the part of the prosecutor to subvert the protections afforded by the double jeopardy clause."  MacKenzie v. Commonwealth, 8 Va. App. 236, 240, 380 S.E.2d 173, 175 (1989).

"The question of whether prosecutorial misconduct was intended to provoke the defendant into seeking a mistrial is a factual question that is appropriately decided by the trial court."  Robinson, 17 Va. App. at 555, 439 S.E.2d at 624-25 (quoting State v. Diaz, 521 A.2d 129, 133 (R.I. 1987)).  "The court's finding concerning the prosecutor's intent is . . . a factual one which we must accept unless it is clearly erroneous."  Kemph, 17 Va. App. at 343, 437 S.E.2d at 215 (quoting United States v. Borromeo, 954 F.2d 245, 247 (4th Cir. 1992)).

Following the jury's verdict, appellant filed a brief in support of his motion for a mistrial that the court had taken under advisement.  The brief also requested that the trial court determine that appellant was "pushed or goaded" into making the motion for a mistrial, barring the retrial of the case.  At the sentencing hearing, the trial court ruled on the motion for a mistrial, denying

the motion because it did not find that appellant met its burden in proving that he was so prejudiced as to require a new trial. The trial court did not make any factual findings regarding appellant's argument that he had been goaded into making the mistrial motion.

As noted above, the question of whether the Commonwealth's Attorney's conduct goaded appellant into making a motion for a mistrial is a factual determination to be made by the trial court. On appeal, we are limited to a review of this factual finding, which we will not disturb unless plainly wrong. Here, the trial judge denied the motion for a mistrial but made no factual determinations regarding the Commonwealth's Attorney's intent. Since we now reverse the trial court's denial of the motion for a mistrial, we consequently remand the matter back to the trial court for a finding on whether the Commonwealth's Attorney's actions were an effort to subvert the protections afforded by the Double Jeopardy Clause in violation of Kennedy, 456 U.S. 667.

### C. Sufficiency of the Evidence

Although we reverse appellant's conviction on the ground that a mistrial should have been granted, we address his sufficiency argument in order to ensure that a retrial on remand will not violate double jeopardy principles. "If the evidence adduced at trial was insufficient to convict [appellant], he is entitled to an acquittal; if he is so entitled, a remand for retrial would violate the Constitution's prohibition against double jeopardy." Parsons v. Commonwealth, 32 Va. App. 576, 581, 529 S.E.2d 810, 812 (2000). Therefore, we now address appellant's claim that the Commonwealth failed to present sufficient evidence to support his conviction of promoting or preparing for dogfighting, in violation of Code § 3.2-6571.

"When reviewing a challenge to the sufficiency of the evidence to support a conviction, this Court views the evidence in the light most favorable to the Commonwealth as the prevailing party below, granting to it all reasonable inferences drawn from that evidence." Burnette v.

- 13 -

Commonwealth, 60 Va. App. 462, 475, 729 S.E.2d 740, 745 (2012). When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). We ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

Appellant contends that the evidence is insufficient to support his conviction for breeding dogs for dogfighting because the evidence did not establish that appellant bred dogs for fighting, instead of merely breeding pit bulls. Further, he asserts no reasonable individual could have found the Commonwealth's witness, Jermain Trueheart, credible.

However, viewing the evidence *in toto*, it was reasonable for the jury to find appellant guilty of promoting or preparing for dogfighting. At trial, two expert witnesses testified about the physical evidence seized from appellant's property, including a breeding stand, spring pole, and flirt pole, which they described as items used in the breeding of fighting dogs. Additionally, appellant had numerous dogfighting publications and journals. Some of these publications contained appellant's own advertisement for puppies, in which he used language relating to dogfighting. A rational trier of fact could have concluded that appellant was guilty of promoting or preparing for the fighting of a dog by breeding fighting dogs.

Additionally, it was within the province of the trier of fact to determine the credibility of the Commonwealth's witnesses, including Jermain Trueheart, and the credibility of appellant himself. The jury, by their verdict, found the Commonwealth's witnesses more credible than the testimony of appellant. In its role of judging the credibility of witnesses, the jury was entitled "to disbelieve the self-serving testimony of the accused and to conclude that the accused [was] lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Accordingly, evidence was sufficient to support the jury's verdict.

## III. CONCLUSION

The trial court did not err by finding that the evidence was sufficient to support appellant's conviction of promoting or preparing for dogfighting, in violation of Code § 3.2-6571. However, the trial court committed reversible error by denying appellant's motion for a mistrial. Accordingly, we reverse appellant's conviction. Further, we remand the case to the trial court for a determination of whether the Commonwealth's conduct bars the matter from retrial under the standard set forth in Kennedy, 456 U.S. 667.

Reversed and remanded.