517 So.2d 1197 (1987)
Glenn CARR
v.
SEWERAGE AND WATER BOARD.
No. CA-7711.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
*1198 Alonzo T. Stanga, III, William R. Mustian, III, Metairie, for appellant.
Gerard M. Victor, General Counsel, Sewerage & Water Bd., New Orleans, for appellee.
Before GULOTTA, C.J., and SCHOTT and BYRNES, JJ.
GULOTTA, Chief Judge.
Glenn Carr appeals from a decision of the Civil Service Commission upholding his dismissal as a laborer for the Sewerage and Water Board of New Orleans (S & WB). After a hearing, the Commission concluded that the dismissal was justified because, while working with a grass cutting crew, Carr "became surly and abusive,... had several confrontations with his supervisor, threw a work tool in his direction and refused to work." Carr contends, however, that his supervisor harassed and physically abused him to the point that he refused to work until a superior could be called to the job site. He argues, therefore, that the evidence is insufficient to prove his behavior was detrimental to the efficient operation of the S & WB. Alternatively, Carr contends that this matter should be remanded to permit him to proffer evidence regarding an incident that occurred after his dismissal from the job site when his foreman allegedly attacked him with a tire iron. We affirm.
Conflicting versions of Carr's conduct on the last day of work, September 20, 1985, were presented at the hearing. According to Jerome Alford, Carr's utility maintenance supervisor, Carr had worked on his grass cutting crew for three or four months without any problem until he "just started acting wild" after using "clickers", which the witness described as marijuana cigarettes laced with PCP, embalming fluid, or other chemicals to increase their potency. Although Alford did not see Carr smoking "clickers" on the job, he smelled the drug on his breath. According to Alford, Carr's behavior became irrational, his temper short, and his work "was very slow to the point of not doing anything at all."
Alford testified that on the morning of the incident Carr lingered in sharpening his ditch bank blade, a grass cutting tool. When Alford suggested it was sharp enough, Carr replied, "F_____, no. You cannot tell me when my blade is f_____ing sharp." Later, when Alford told Carr that he was taking too many water breaks and intruding upon the other workers' time, Carr became upset and threw his cutting tool in the direction of Alford, saying "F_____ it. I'm not doing nothing."
*1199 After this exchange of words, Frederick Renz, a SW & B supervisor, came to the job site and talked with both men. Alford testified that as soon as Renz left after resolving the dispute, however, Carr began cursing him again, put his hand in his face, and threatened to kick Alford's "ass". Renz was called back to the scene and dismissed Carr.
Carr, on the other hand, testified that Alford harassed him and called the supervisor even though he had been working and had only taken one or two water breaks. According to Carr, after Renz left, Alford continued harassing him, ran up to him, and knocked him down without provocation. After this incident, Carr testified that he refused to work and waited for the supervisor to return. Carr denied smoking "clickers" on or off the job.
Several other members of the work crew also testified. Byron Collins, a laborer, stated that Carr had directed obscene language to Alford and had thrown his ditch bank blade toward the back of the truck near Alford. According to Collins, at about 9:30 a.m., before the supervisor arrived at the job site, Carr and Alford had been arguing behind a truck. Collins saw Carr lying on the ground and telling Alford, "Go ahead, beat me some more." Collins also testified that another member of the crew, Willie Singleton, had a supply of "clickers", although he did not see Carr or Singleton actually smoke them.
Walter Green, a dump truck driver, did not witness any physical contact between Carr and Alford during the time he was on the job site, but testified that Carr had called Alford a "whore". According to Green, when he took Carr and Singleton to a bus stop after they had been dismissed from the job site, the two were about to light a "clicker".
Willie Singleton, Carr's fellow crewmember, also testified that Carr and Alford had words. According to Singleton, when Alford hollered at him to cut grass, Carr intervened and asked Alford to leave Singleton alone. Singleton testified that Alford then turned around and knocked Carr to the ground. Singleton denied that he and Carr had smoked any clickers on the job. Another witness, Alfred Scales, also testified that Alford had hit him in the jaw on a prior occasion when he bumped into him.
Frederick Renz, the S & WB supervisor who was called twice to the job site, testified that the argument between Carr and Alford had worsened by the time he visited the scene the second time. According to Renz, since Carr had been warned earlier, he had no option but to send him to the office. At the scene, Renz talked to members of the crew, and later approved a recommendation for Carr's dismissal. He sent an interoffice memo to his supervisor stating his opinion that Alford had no alternative but to act as he did, and that Carr's abusive behavior and obscene language had disrupted the work of the crew. Renz recommended that both Carr and Singleton be terminated from S & WB employment due to "trouble making." On June 24, 1985, approximately three months before this altercation, Carr had been demoted from the job of equipment operator to that of laborer because of disciplinary action.
The hearing officer also allowed proffered evidence of another incident between Carr and Alford at the S & WB yard on Peoples Avenue later in the afternoon. According to this testimony, Carr and Alford again exchanged words and Alford knocked Carr to the ground. Alford, corroborated by another witness, testified that he had hit Carr in self defense after Carr advanced on him with a clenched fist. Carr admitted that he and Alford had exchanged words at the yard later that afternoon, but denied raising his fist at Alford or making any motion towards him before he was knocked down.
To justify the dismissal of a civil service employee, the appointing authority must prove that the conduct complained of impaired the efficiency of the public service and bore a real and substantial relationship to its efficient operation. Noel v. Dept. of Sanitation, 490 So.2d 498 (La.App. 4th Cir. 1986). The evidence considered, we conclude that the S & WB carried its burden in the instant case. The testimony of Alford and Renz, as corroborated by the other crew members, supports the Commission's *1200 conclusion that Carr behaved abusively toward his foreman, unjustifiably refused to work, and thereby disrupted the efficiency of the crew. Depite Carr and Singleton's testimony that the foreman had harassed Carr and hit him, we cannot say that the Commission committed manifest error or abused its discretion in upholding Carr's dismissal.
We further find no error in the hearing officer's refusal to allow the proffer of testimony about yet another purported incident between Carr and Alford later in the afternoon outside of Sewerage and Water board property. Supervisor Renz testified that incidents away from the immediate job site had no bearing on his action to dismiss Carr, and his memorandum contained no references to the later fight at the Sewerage & Water Board central yard or any other incident. Under these circumstances, the hearing officer properly excluded irrelevant testimony about a later clash between Carr and Alford. Assuming the hearing officer should have allowed a proffer of the inadmissible evidence under LSA-C.C.P. Art. 1636, the error is harmless and cannot serve as grounds for a remand.
Accordingly, the decision of the Civil Service Commission upholding Glenn Carr's dismissal is affirmed.
AFFIRMED.