VICKIE J. SMITH

v.

MIKE HYLTON, t/a M. H. STABLES

No. 2241-91-4

Decided April 24, 1992

COUNSEL

(Roger A. Ritchie, on briefs), for appellant.

(M. Bruce Wallinger, Wharton, Aldhizer & Weaver, on brief), for appellee.

OPINION

**COLEMAN, J.**—The appellant, Vickie Jean Smith (claimant), was employed as a horse trainer by Mike Hylton, who operated a stable for boarding and training horses as a sole proprietorship under the name Mike Hylton Stables. On March 25, 1990, claimant sustained multiple fractures of her right tibia when she was thrown from a customer's horse. She filed a claim with the Workers' Compensation Commission for temporary total compensation and medical benefits. The commission held that it lacked jurisdiction to consider her claim. The commission ruled that the employer, Mike Hylton, was not subject to the provisions of the Act because, as provided by Code § 65.2-101, he regularly had in his service fewer than three employees, and he and his employees had not voluntarily elected to be bound by the Act.

We reverse and remand the commission's decision because the deputy commissioner erroneously refused to allow the claimant to proffer evidence that purportedly would have shown that Mike Hylton, at the time of Smith's injury, was operating his business at the same volume that he had in 1986 and 1987, at which time

he regularly employed three or more employees. We hold that the claimant had the right to proffer her evidence, or avouch for the record what her evidence would have been, because, without a proffer, we cannot ascertain on appeal whether the evidence she sought to introduce was relevant and material. Thus, we remand the claim to the commission to receive the claimant's proffer of evidence. The commission may reconsider its ruling in light of the proffer, if it be so inclined.

■■■ The threshold jurisdictional issue which the commission had to decide was whether the employer regularly had in his service three or more employees so as to come within the coverage of the Act. Code § 65.2-101. " 'Employee' means . . . [e]very person . . . in the service of another under any contract of hire or apprenticeship, written or implied, except . . . one whose employment is not in the usual course of the trade, business, occupation or profession of the employer." Code § 65.2-101. Both full-time and part-time employees who are regularly employed to carry out the trade or business of the employer must be counted in determining the number of employees "regularly in service" to the employer. *Cotman v. Green*, 4 Va. App. 256, 258, 356 S.E.2d 447, 448 (1987). "[A]ny person hired by the employer to work in the usual course of the employer's business is an 'employee' under the Act regardless of how often or for how long he may be employed." *Id.* (citing *Hoffer Bros. v. Smith*, 148 Va. 220, 226, 138 S.E. 474, 476 (1927)). The number of employees regularly in service of the employer is the number "used to carry out the established mode of performing the work of the business . . . even though the work may be recurrent instead of constant." *Cotman*, 4 Va. App. at 259, 356 S.E.2d at 448.

Mike Hylton conceded, and the commission found, that he regularly employed two employees at his horse training stable during the year preceding claimant's injury. The commission found, however, that on the occasions when more than two employees were working at the stable, there was always an overlap when one employee was in the process of leaving and another beginning employment so that Hylton always had fewer than three employees. The claimant asserted, however, that in addition to herself and Julie Heishman, Hylton employed John David Huffman, that he also hired Margaret Grattan as a trainer, and that he had, after Heishman ended her employment, periodically employed Augus-

tine Mujica and another Mexican gentleman to perform stall cleaning duties which Heishman previously had performed. Thus, claimant contended that Hylton actually employed three or more persons in his operation at or about the time she was injured. In addition to this evidence, the claimant sought to testify concerning the number of employees that Hylton employed to operate the stable when claimant had previously worked for him in 1986 and 1987, and to describe the nature of the operation. The deputy commissioner ruled that the number of employees that Hylton had in 1986 and 1987 or the nature of the operation was not relevant to prove the number of employees that Hylton had when claimant was injured in 1989 or whether individuals associated in the business in 1989 were, in fact, employees. The deputy commissioner disallowed the claimant's request that she be permitted to proffer her testimony and evidence because the commissioner found that the evidence about the operation in 1986 and 1987 was not relevant to Hylton's operation in 1989.

Presumably, claimant wanted to show that, historically, the number of employees that Hylton regularly hired and needed in his business to train and care for the horses depended upon the number of horses that were being boarded, and that the number being boarded when she was injured was between twelve and fifteen, which she contends required, in addition to two or three people needed to work the horses, a separate person to clean the stalls. She asserted that she could prove that the volume and nature of doing business in 1986 and 1987 was the same as when she was injured. In addition, she contended that the evidence she would have proffered—that in 1986 and 1987 Hylton regularly employed an additional person just to clean stalls—gave credence to her claim that Huffman, Augustine Mujica, and a Mexican gentleman who was there a short time after she left were regular part-time employees. She contended that the evidence the commission rejected by way of the proffer was relevant and may have influenced the commission's finding whether Huffman, Mujica, and the Mexican gentleman were regular employees within the meaning of the Act.

It is well settled that when a party's evidence has been ruled inadmissible, the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was

admissible. *Whittaker v. Commonwealth*, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). The Court of Appeals and Supreme Court have frequently dismissed appeals because a party failed to proffer the questions and evidence that a presiding officer ruled improper or inadmissible. *See Spencer v. Commonwealth*, 238 Va. 563, 385 S.E.2d 850 (1989), *cert. denied*, 493 U.S. 1093 (1990); *Lowery v. Commonwealth*, 9 Va. App. 304, 387 S.E.2d 508 (1990). Here, however, we have a case where the party sought to proffer her evidence, but the deputy commissioner who presided over the evidentiary hearing rejected the proffer and ruled that the evidence was not relevant to prove the material fact of the number of employees that Hylton had in 1989 when claimant was injured.

▮ While we are not totally in the dark concerning the nature of the evidence that the claimant sought to introduce, we do not know enough about the specifics of her evidence that we can say with assurance that the deputy commissioner ruled correctly that the evidence was not relevant. Even if the deputy commissioner correctly ruled that the evidence was not relevant, the proffer should have been accepted. The deputy's refusal to permit claimant to proffer her evidence has frustrated an appellate review of the ruling. Although no Virginia case addresses a factual setting in which a proffer of evidence was not permitted, other courts have done so and consistently have held that "where [a] court refuses to allow a proffer, it prevents a determination of the propriety of the trial court's ruling by the reviewing court and is prejudicial to the party making the proffer and generally is reversible error." *Thunderbird Drive-In Theatre, Inc. v. Reed*, 571 So. 2d 1341, 1344 (Fla. Dist. Ct. App. 1990), *review denied*, 577 So. 2d 1328 (Fla. 1991). The rule is no different for administrative proceedings. To hold otherwise would allow a hearing officer or trial judge to insulate his or her ruling and prevent it from being reviewed on appeal. *See Jones v. Jones*, 22 Ark. App. 267, 270, 739 S.W.2d 171, 173 (1987); *see also Hollingsworth v. United States*, 531 A.2d 973, 981 (D.C. 1987).

Situations may exist where the hearing officer or trial judge can ascertain, and an appellate court may be able to determine, without a proffer or avowal that the evidence was cumulative, irrelevant, immaterial or otherwise clearly inadmissible and the rejection of a proffer would be harmless error. *See Carr v. Sewerage & Water Bd.*, 517 So. 2d 1197, 1200 (La. Ct. App. 1987) (commis-

sion properly refused proffer of cumulative evidence); *Reed*, 571 So. 2d at 1345. This is not such a case.

A hearing officer or trial judge need not delay or interrupt the proceedings in order to receive a proffer for the record. The proffer may be made post-hearing by presenting the testimony on the record, or by an avowal by counsel, or by submitting a written account or affidavit. However, in this instance, the deputy commissioner rejected any proffer. We reverse and vacate the commission's ruling and remand the claim so that the commission can receive the claimant's proffer of her evidence and, to the extent it may become necessary, reconsider and reverse its decision.

*Reversed and remanded.*

Benton, J., concurred.

Willis, J., dissenting.

I respectfully dissent. In my view, the record in this case, even without a formal proffer, clearly supports the deputy commissioner's ruling that the nature of Hylton's business in 1986 and 1987 and number of persons he then employed were not relevant to prove that he regularly had in his service three or more employees in 1989 when the claimant was injured. While I do not intend to suggest that a deputy commissioner may frustrate appellate review by refusing a proffer of evidence, the circumstances of this case make clear that the deputy commissioner's ruling was correct.

Accordingly, I would affirm.