COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued by teleconference


BRIAN CONLEY CABLE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1960-07-4                      JUDGE RANDOLPH A. BEALES
                                                    SEPTEMBER 15, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Herman A. Whisenant, Jr., Judge Designate

Lorie E. O'Donnell, Public Defender, for appellant.

Leah A. Darron, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


        Brian Conley Cable (appellant) was convicted in a jury trial of aggravated sexual battery of

the twelve-year-old victim, A.D., in violation of Code § 18.2-67.3.  Appellant argues on appeal

that the trial court committed reversible error by prohibiting him from attempting to impeach the

victim and her mother (J.D.) on issues that, appellant claims, concerned their motive to fabricate

the aggravated sexual battery allegation.  For the following reasons, we disagree with appellant's

argument and affirm his aggravated sexual battery conviction.

I. BACKGROUND

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)); see Riner v. Commonwealth, 268 Va. 296, 330, 601

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 555, 574 (2004) (viewing the evidence in the light most favorable to the Commonwealth, "as we must since it was the prevailing party in the trial court").

So viewed, the evidence established that appellant and J.D. had lived together for several years. Appellant and J.D. had one child together, and J.D. had two other children, including A.D. Appellant and A.D. did not have a good relationship; they had arguments over chores and yelled at each other "a lot." The relationship between appellant and J.D. also had become strained by early 2006. According to J.D., appellant called her "a b*tch" in front of his father, who lived with them, and appellant was "very mean and rude" to A.D. and her sister. J.D. told appellant that she planned to return to Indiana, where her family lived, with the children "if [appellant's] behavior continued."

On a typical day in their household, J.D. left for work before A.D. woke up. Occasionally, J.D. would return home in the mornings and notice that A.D. and/or her sister were sleeping with appellant in the bed shared by J.D. and appellant. When J.D. asked him to explain why he had moved the girls to their bed after she left for work, appellant claimed that he "was cold and he didn't feel well and he wanted someone to snuggle" with him.

On an evening in February 2006, the power went out in the family's house. In order to stay warm, J.D. suggested that she and appellant share their bed with the children. A.D. became visibly upset at this suggestion. She told J.D. that appellant had rubbed her vagina with his finger on several occasions in that bed. According to the victim, A.D., she would wake up some mornings in appellant's bed – having gone to sleep in her own bed the night before – to find appellant rubbing her vagina over her underwear. She said that appellant wore a short black nightgown and silky white underwear every time he touched her in this way. A.D. could not remember exactly how many mornings appellant had rubbed her vagina, but she said it occurred more than once between the beginning of January 2006 and February 11, 2006.

J.D. met with her pastor to discuss the victim's allegation and decided not to report the allegation to the police. Instead, on the pastor's advice, J.D. attempted to establish "some ground rules" for the household. Under these rules, appellant was not permitted to bring the children into his bed.[1] Appellant became angry when he was informed of the rules, and he did not abide by them. He continued to bring the children to his bed in the morning when J.D. was not there.

J.D. and the children moved back to Indiana in July 2006, and J.D. contacted the local police there about appellant's behavior. The Fauquier County authorities learned of the allegations later that month.[2] During an interview with a police lieutenant, appellant denied the allegation that he touched the victim's vagina in a sexual manner, but he also claimed that he could not remember certain details because he suffered from posttraumatic stress syndrome. He acknowledged that he could have touched A.D.'s vagina, but, if he did, he did not remember it. Appellant did admit that he took the children to bed with him "a few times a week."

At trial, appellant sought to cross-examine A.D. and J.D. about appellant's desire to move the family to Canada; furthermore, appellant sought to cross-examine J.D. about disagreements they had over how to discipline the children. The Commonwealth objected to these questions as beyond the scope of direct examination and irrelevant. Appellant contended that the questions related to the witnesses' bias against appellant. The trial court sustained the Commonwealth's

---

[1] In addition, appellant – who would enter the bathroom and wash the victim's hair while she was showering – was not permitted to wash the girls' hair anymore. During an interview with Fauquier County authorities, appellant acknowledged that he washed A.D.'s hair even though she did not want him to do so.

[2] A.D. was interviewed by Fauquier police and child protective services on July 24, 2006, and, the next day, she was evaluated by a sexual assault nurse examiner (SANE nurse) at Fairfax Hospital. The SANE nurse found no injuries to the victim's vaginal area, but she testified at trial that she did not expect to find any since the reported act occurred well more than five days before the examination, and, after five days had elapsed, it was often not possible to determine if there had been any such injuries. She also noted that, if there were simply an inappropriate touching of the vaginal area, as was charged here, there is often no sign of injury.

objections.[3]  Appellant did not proffer the questions that he wanted to ask A.D. and J.D. or the expected answers to those questions.

The jury convicted appellant of aggravated sexual battery, and appellant now appeals.

## II.  ANALYSIS

Appellant argues that the trial court erroneously prohibited his attempts to impeach A.D. and J.D.  The Commonwealth contends this Court cannot consider the merits of appellant's argument because he failed to proffer the expected answers from the witnesses.  Furthermore, the Commonwealth contends that any error at trial was harmless.  For the reasons stated below, we agree with the Commonwealth.

When an objection is sustained and a party's evidence is ruled inadmissible, as it was in this case, "'the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible.'"  Lockhart v. Commonwealth, 34 Va. App. 329, 340, 542 S.E.2d 1, 6 (2001) (quoting Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992)).  Consequently, this Court "'will not consider testimony which the trial court has excluded before it was presented without a proper showing of what that testimony would have been.'"  Id. (quoting Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999)).

In Lockhart, a forcible sodomy case involving a young child, defense counsel asked the victim's mother on cross-examination whether the victim had any disciplinary problems at school around the time of the alleged sexual abuse.  Id. at 339, 542 S.E.2d at 5.  When asked by the trial court how the question was relevant, defense counsel responded that he sought to ask the mother whether the victim tended to make excuses for such disciplinary problems.  Id.  The trial

---

[3] Prior to the Commonwealth's objection during appellant's cross-examination of A.D., she acknowledged that there "had been some discussion about moving to Canada."

court sustained the Commonwealth's objection to this line of questioning, and counsel proceeded to a different subject in his cross-examination of the mother.  Id.  On appeal, this Court found nothing in the record constituted a proper proffer of the evidence rejected by the trial court, and, without such a proffer, this Court could not "ascertain on appeal whether the evidence Lockhart sought to introduce was relevant to show that M.B. had a motive to fabricate his testimony."  Id. at 340, 542 S.E.2d at 6.  Therefore, the failure to proffer this evidence, this Court ruled in Lockhart, precluded appellate review of the alleged error in the trial court.

Similarly, appellant here did not make a proper proffer of A.D.'s and J.D.'s expected responses to the cross-examination questions.  In the absence of such a proffer, "we are unable to determine whether the circuit court's decision to exclude that testimony, if erroneous, prejudiced" appellant.  King v. Cooley, 274 Va. 374, 380, 650 S.E.2d 523, 527 (2007).  As an appellate court, therefore, we have no basis for adjudication of appellant's claim of trial court error here.  Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977).

Furthermore, if A.D.'s acknowledgement that the family discussed moving to Canada was considered appellant's proffer of evidence that A.D. and J.D. had a motive to fabricate, any conceivable error by the trial court in excluding additional testimony on this issue was harmless.

On brief, appellant claims that this Court should review the trial court's evidentiary rulings strictly as these rulings violated his constitutional rights to confrontation and due process.  However, appellant never contended below that these rulings implicated any constitutional rights, and, therefore, appellant waived consideration of any constitutional error in this appeal.  See Rule 5A:18; Arnold v. Commonwealth, 4 Va. App. 275, 280, 356 S.E.2d 847, 850 (1987); see also Taylor v. Illinois, 484 U.S. 400, 406 n.9 (1988).

Under the non-constitutional harmless error standard that, therefore, we must apply here, no judgment shall be reversed for error of the trial court "[w]hen it plainly appears from the

record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Sargent v. Commonwealth, 5 Va. App. 143, 154, 360 S.E.2d 895, 903 (1987) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 674 (1986)).

Here, even if the trial court had permitted appellant's cross-examination of A.D. and J.D., the witnesses' responses to these questions, at best, would have been cumulative of other evidence.

A.D. and J.D. both readily acknowledged at trial that they did not have good relationships with appellant in 2006. Appellant reminded the jury of this testimony in closing argument, claiming that A.D. fabricated the allegation against appellant because she "was annoyed that [appellant] would get on her case about doing her chores" and contending that J.D. "wanted out of this relationship" and wanted to move back to Indiana. Certainly, the jury could have fairly inferred from the evidence admitted at trial that both J.D. and A.D. were unenthusiastic about moving to Canada with appellant and that the appellant and J.D. had many conflicts over the children. Therefore, appellant fails to demonstrate that the exclusion of any additional testimony affected the jury's determination of whether or not the sexual abuse allegation was fabricated. See King, 274 Va. at 380, 650 S.E.2d at 527 (holding the exclusion of cumulative testimony could not have affected the jury's verdict and, thus, was harmless).

Notwithstanding the trial court's evidentiary rulings, appellant was not prevented from attempting to impeach the credibility of the witnesses by other means. During closing argument,

for instance, appellant argued that A.D.'s allegations were not credible because J.D. – the victim's own mother – did not call the police, take the child to the doctor, or "pack up her kids and leave" immediately upon learning of the allegation. However, the jury, as it was entitled to do, apparently accepted J.D.'s testimony that she acted on the advice of her pastor after learning of the sexual abuse allegation. See Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) ("It is the province of the jury to evaluate the credibility of witnesses.").

In addition, the prosecution's case against appellant was very strong. Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, the evidence at trial established that appellant frequently took A.D. and her sister from their beds during the morning, placed them in his bed, and "snuggled" with them. Appellant then later disregarded household rules specifically designed to prohibit this behavior. Even appellant's denial of the alleged sexual abuse was equivocal. He admitted to the Fauquier police that he possibly touched A.D.'s vagina, but he also claimed that he could not remember. Furthermore, the jury saw A.D. testify and considered very similar evidence allegedly impeaching her testimony, yet the jury found that she was credible. The strength of the prosecution's case reinforces the conclusion that, even if we assume without deciding that the trial court committed error here, any conceivable error was harmless. On these facts, therefore, it is plainly apparent that appellant was afforded a fair trial on the merits. See Code § 8.01-678.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's conviction for aggravated sexual battery.

Affirmed.