UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Causey and Senior Judge Clements
Argued by videoconference

DANIELLE COKER

v.      Record No. 1254-20-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE DORIS HENDERSON CAUSEY
FEBRUARY 8, 2022

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

L. Olivia Wiggins, Assistant City Attorney II (Cheran Cordell Ivery,
Hampton City Attorney; David S. Dildy, Guardian *ad litem* for the
minor children, on brief), for appellee.

Danielle Coker ("mother") appeals permanency planning orders with respect to her children,

A.C., G.C., and E.C. ("children"), entered by the Circuit Court of the City of Hampton ("circuit

court").  On appeal, mother argues that the circuit court erred in approving the permanency planning

goals of relative placement/adoption because the City of Hampton Department of Social Services

("DSS") failed to prove the goals were in the best interest of the children.[1]  Mother contends that

DSS did not make reasonable efforts to reunite her with her children or to identify suitable

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mother contests the permanency planning goal of adoption, not the permanency
planning goal of relative placement.  Although the goals were changed to relative
placement/adoption, the court effectively changed the goals to adoption only, noting that
"adoption was the only achievable goal at [that] time."  Additionally, the words "of adoption"
were handwritten into typed form orders, altering the language such that parts of the orders now
read "[t]he permanent goal *of adoption* is achievable at this time, and the foster care plan is
approved as submitted and incorporated by reference."

relative placements.[2]  Mother also claims the circuit court erred in sustaining DSS' objection to the

testimony of the children's maternal grandmother, Gail Lasko ("Ms. Lasko").  For the reasons set

forth below, we affirm the circuit court's ruling.

## I. BACKGROUND[3]

Mother and Oscar Coker ("father") are the biological parents of A.C., G.C., and E.C.,

who were respectively ten years old, four years old, and two years old at the time of trial and are

the subjects of this appeal.[4]

DSS became involved with the family in February 2019, after father overdosed on drugs

in front of the family.  Consequently, the parents signed a safety plan that placed the children

---

[2] While the assignment of error does not contain this specific rationale for the circuit court's error—that it was error to approve the permanency planning goals of relative placement/adoption because DSS did not make reasonable efforts to find relative placement options—we still consider the argument.  The Supreme Court of Virginia has held that assignments of error need only "identif[y] a particular preliminary ruling of the trial court, as opposed to broadly criticizing the trial court's judgment as being contrary to the law," to "warrant consideration on the merits." *Findlay v. Commonwealth*, 287 Va. 111, 116 (2014).  An assignment of error need not include "*why* it was error" for the trial court to make the ruling an appellant challenges. *Id.* (alteration in original).  An appellant may include the rationale in the argument section of her brief, which allows the appellee to respond to the issue on brief. *See id.* at 113, 116 (finding that where the appellant had included the rationale for why the circuit court erred in the argument section, the assignment of error was sufficient, as "evidenced by the fact that the [appellee]'s attorney clearly understood the issues on appeal well enough to prepare a focused brief in opposition to [appellant]'s petition").

Here, although mother did not include the rationale that the circuit court erred in approving the permanency planning goals of relative placement/adoption because DSS failed to make reasonable efforts toward the goal of relative placement, this rationale was included in the argument section.  DSS responded to this argument on brief.

[3] The record in this case, which includes a written statement of facts in lieu of a transcript, was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[4] Father did not appeal the circuit court's orders.

temporarily with Ms. Lasko.  About two weeks later, Ms. Lasko, who lived in Florida and had to return home, unilaterally returned the children to their parents' custody.  A new safety plan was signed immediately, placing the children with a paternal aunt.  A week later, mother and father tested positive for cocaine.  Due to the aunt's inability to care for the children any longer, DSS placed the children in respite care.  DSS ordered that mother and father maintain sobriety and appear for substance treatment, outpatient therapy, and parenting classes.  In April 2019, mother again tested positive for cocaine, and the children entered foster care in June 2019.

DSS' initial goals were return home/relative placement.  To this end, DSS instituted a foster care service plan which ordered that mother and father participate in substance abuse treatment and random drug screens.  Father did not participate in any of the offered services.  As a result, DSS eliminated him as a placement option.

In contrast, "mother participated in all service[s] . . . recommended by [DSS]," and DSS noted her ongoing cooperation and engagement.  She completed a parenting capacity evaluation and a substance abuse evaluation.  She also participated in parenting classes, twelve-week nurturing courses, weekly substance abuse treatment groups, reunification services, and weekly therapeutic supervised visitations with the children.  Additionally, mother made progress in other areas.  She found stable employment and housing, and, in July 2020, separated from father to ensure that his lack of commitment to the foster care service plan and continued drug use would not affect the chances of the children being returned to her.  Notwithstanding her progress, however, she continued to test positive for drugs.  She tested positive five times between February 2019 and August 2020 and missed at least seven random drug screenings scheduled by DSS.

In pursuit of the secondary goal of relative placement, DSS, as required, investigated several relatives, some of whom lived out of state, as possible relative placement options.  A

local paternal aunt expressed interest in taking custody of the children.[5] For several out-of-state relatives, DSS initiated the Interstate Compact on the Placement of Children ("ICPC") process, a prerequisite to the children's placement with an out-of-state family member. Among the available relatives were a paternal uncle, a maternal aunt, and the Laskos (Ms. Lasko and her husband). In July 2020, after learning it was likely the children would return home, the family members each communicated to DSS that they no longer wanted to be considered as placement options. The Laskos cited their age and poor health as their reasons for withdrawing.

In August 2020, mother tested positive for cocaine. Due to mother's relapse, DSS filed new foster care plans with the goals of relative placement/adoption. At this point, the children had been in foster care for more than twelve months. After learning of mother's relapse and that the children would not return home, the Laskos indicated to DSS that they again wanted to be considered as placement options. At a family engagement meeting in September 2020, Ms. Lasko expressed that her desire was to have mother raise the children. When DSS questioned Ms. Lasko's protective capacity, Ms. Lasko denied she would return the children to mother. In September 2020, the children's paternal aunt contacted DSS and expressed renewed interest in accepting custody of the children. She indicated that she was willing to adopt "one or two," but not all three of the children, as doing so might be too burdensome. She also stipulated that she was not willing to take custody "if parental rights remained intact."

In October 2020, the circuit court heard the appeal of the permanency planning orders. By then, the children had been in foster care for nineteen months. At the hearing, mother's counsel attempted to introduce direct testimony from Ms. Lasko about what she had done to comply with the ICPC process, and why she and her husband were suitable relative placement

_____

[5] After the paternal aunt had expressed interest in being a placement option, DSS arranged for the children to visit her. The children had several supervised visits with the aunt, as well as a lengthier unsupervised visit.

options. DSS objected to the proposed testimony, arguing "that any evidence to be offered by [Ms. Lasko], including evidence concerning suitability of the Laskos as potential relatives with whom to place the children, were immaterial and irrelevant to the matter before the Court." DSS explained that "because Hampton DSS properly and timely initiated the ICPC process, but the receiving state had not approved Ms. Lasko as a placement by [the second permanency planning hearing],[6] what Ms. Lasko had or had not done to comply with ICPC was irrelevant." The circuit court sustained DSS' objection but allowed mother's counsel to proffer the expected testimony. Mother's counsel proffered:

> Ms. Lasko would testify that she and her husband had been actively involved with social workers in Florida and had made good faith attempts to comply with all the requirements of the ICPC process, and that [the Laskos] had a current desire, ability, and wherewithal to take immediate custody of the children . . . [the Laskos] complied with the initial ICPC requirements . . . until [they] contacted Hampton DSS in July 2020 to express they were no longer interested in being considered as placement options for the children, citing their poor health, old age, and resulting inability to adequately care for the children[. A]t that point the Laskos took no further action to complete the ICPC process until they found out [mother] had a positive drug screen just before the [second permanency planning] hearing in September 2020, at which point the Laskos requested to reinitiate the ICPC process, although Hampton DSS maintained it was too late then to do so.

The circuit court approved the new permanency planning goals of relative placement/adoption. After approving the goals, the circuit court found that "there was no additional time allowed by statute for a goal other than adoption to be achieved once the matter ha[d] reached [the second permanency planning hearing]" and determined that "adoption was the

---

[6] "The purpose of [a permanency planning] hearing is to establish a permanent goal for the child and either to achieve the permanent goal or to defer such action through the approval of an interim plan for the child." Code § 16.1-282.1. "If an interim permanency plan is approved, a [second] permanency planning hearing [is held] not more than 6 months from the date of [the initial permanency planning] hearing." Court Improvement Program, Office of the Executive Secretary, Supreme Court of Virginia, *Child Dependency Benchcards: A Resource to Support Meaningful Court Hearings* (June 2020).

only achievable goal at [that] time." The form language in the orders was altered, with the words "of adoption" handwritten into the orders so that parts of the orders read "[t]he permanent goal *of adoption* is achievable at this time, and the foster care plan is approved as submitted and incorporated by reference." Additionally, the circuit court found that there were no "viable, approved relative placement options." This appeal follows.

## II. ANALYSIS[7]

### A. The Circuit Court Did Not Err in Changing the Permanency Planning Goals.

Mother argues that the circuit court erred in changing the permanency planning goals from return to parent/relative placement to relative placement/adoption because the new goal of adoption is not in the best interest of the children.[8] She contends that DSS did not make reasonable efforts to reunite her with her children or identify suitable relative placements. Mother asserts the circuit court based its ruling on a single lapse in mother's rehabilitation efforts and that after her lapse, DSS improperly abandoned its reunification efforts.

On appeal, "we view the evidence in the light most favorable to the prevailing party, in this case, [DSS], and grant to it all reasonable inferences fairly deducible from the evidence."

---

[7] Mother filed a separate appeal in this Court, No. 0048-21-1, contesting the termination of her parental rights to the children, which we also decide this day. We recognize that when an appellant challenges both the circuit court's termination of parental rights and change in permanency planning goal, this Court has found that the "decision to affirm the termination [of parental rights] order necessarily subsumes [an analysis of the change in permanency planning goal] because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 265 n.3 (2005). However, on more than one occasion, this Court has analyzed the merits of a trial court's decision to change a permanency planning goal even while affirming the circuit court's termination of parental rights. *See McMillian v. Chesterfield Dep't of Soc. Servs.*, No. 2177-10-2 (Va. Ct. App. May 3, 2011); *Northover v. City of Hampton Dep't of Soc. Servs.*, No. 2535-04-1 (Va. Ct. App. Dec. 13, 2005). As the appeal before us was filed as a separate case, we analyze the assignments of error of this appeal without considering whether the issues have been subsumed by our ruling in mother's related appeal.

[8] *See supra* note 1.

- 6 -

*King v. King George Dep't of Soc. Servs.*, 69 Va. App. 206, 210 (2018) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 420-21 (2012)). "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations." *Boatright v. Wise Cnty. Dep't of Soc. Servs.*, 64 Va. App. 71, 79 (2014) (quoting *Najera v. Chesapeake Div. of Soc. Servs.*, 48 Va. App. 237, 240 (2006)).

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

"When addressing matters concerning a child, . . . the paramount consideration of a trial court is the child's best interest." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 328 (2013) (quoting *Logan*, 13 Va. App. at 128) (noting that a child's best interest is the paramount consideration when evaluating a trial court's change in permanency planning goal). Additionally, in reviewing a foster care plan, "[t]he court order shall state whether reasonable efforts, if applicable, have been made to reunite the child with his parents." Code § 16.1-282. Subsection E of Code § 16.1-282.1 also requires the trial court to consider "whether reasonable efforts have been made to achieve the permanent goal identified by the board or agency." "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42

Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338 (1992)).

A preponderance of the evidence supports a finding that changing the permanency planning goal was in the best interest of the children. The children were in foster care for approximately nineteen months due to substance abuse affecting parental capacity. The record reflects that, during that time, mother tested positive five times and failed to report for drug testing at least seven times. Thus, contrary to mother's contentions, the change in the permanency planning goals was not based on a single relapse, but, rather, on repeated drug relapses. The circuit court could have reasonably concluded that each failed drug test represented that mother was not in a position to resume custody of the children. Although mother participated in all the services offered and made progress in other areas, these accomplishments did little to remedy the conditions that led to the children's entry into foster care—the parents' substance abuse. There is evidence that mother's drug addiction was unimproved and that changing the permanency planning goals was warranted. "It is clearly not in the best interest of a child to spend a lengthy period of *time* waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (emphasis added) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

The record shows that DSS provided numerous reunification services to mother, in which she participated. The parenting classes, substance abuse treatment group sessions, weekly supervised visitation with the children, and a multitude of other programs, resources, and services offered to mother are evidence of at least a reasonable effort on the part of DSS to achieve reunification. Additionally, DSS reached out to several family members to be potential relative placements, but these family members either were not interested or withdrew their

interest. The children's paternal aunt was ultimately only willing to take custody by adoption. The Laskos, who had shown interest in the children's placement since the children's entry into foster care, retracted their interest in taking custody of the children because of the Laskos' advanced ages and poor health. Ms. Lasko returned the children to their parents in breach of the temporary safety plan and openly communicated a desire to have mother raise the children. Thus, although Ms. Lasko later renewed her interest in taking custody of the children, the circuit court could have found that from the evidence in the record, Ms. Lasko was not a suitable placement for the children and that there were not any suitable relative placements for the children.

Therefore, in this case, a preponderance of evidence supports the circuit court's conclusion that changing the permanency planning goal to relative placement/adoption was in the best interest of the children, despite DSS' reasonable efforts.[9] The trial court is presumed to have considered all the evidence; thus, we cannot say that the circuit court erred.

### B. Mother's Insufficient Proffer Does Not Allow Us to Determine Whether the Circuit Court Erred.

Mother argues that the circuit court erred in not allowing Ms. Lasko to testify about Ms. Lasko's efforts to comply with the ICPC process and suitability as a placement option. Mother argues that such testimony is "plainly relevant" to the circuit court's consideration of the children's relative placement options and determination of whether DSS "made reasonable efforts toward

---

[9] To the extent the circuit court intended to rely on the extended amount of time the children spent in foster care as grounds for changing the permanency planning goal, we reiterate that the court must articulate its reasons for changing the goal in the context of the best interest of the children and may not bind itself to deadlines at the expense of the best interest of the children. As this determination is the threshold step in the analysis of all foster care plans, it necessarily follows that a failure to comply with any statutory time frame will never independently be dispositive. *See Richmond Dep't of Soc. Servs. v. Crawley*, 47 Va. App. 572, 582 (2006) ("The lack of a definite timeline in which a parent will be able to comply with social services' plan is a relevant factor under the statute, but is not alone dispositive of the inquiry the trial judge must make under the statute.").

relative placement before resorting to adoption as the goal of the foster care plan." In contrast, DSS

contends that Ms. Lasko's testimony is "irrelevant," as there was no time remaining, according to

the timeline established by Code § 16.1-282.1, to complete the process required to qualify the

Laskos as an out-of-state placement option.[10]

This Court "reviews a trial court's ruling admitting or excluding evidence for abuse of

discretion." *Payne v. Commonwealth*, 292 Va. 855, 866 (2016). "In Virginia, when testimony is

rejected before it is delivered, an appellate court has no basis for adjudication unless the record

---

[10] Although we agree that DSS should find permanent arrangements for displaced children in a timely manner, there is no definitive time limit on relative placement or goal achievement in Code § 16.1-282.1. There is no statutory basis, either federal or state, for DSS' claim. The record does not explain the time frame; however, it appears that DSS was following the statutory mandate in Code § 16.1-282.1(A). Code § 16.1-282.1(A) requires that a permanency planning hearing be held within ten months of the dispositional hearing when certain circumstances exist. In addition, Code § 16.1-282.1(A) states:

> If the child has been in the custody of a local board or child welfare agency for 15 of the most recent 22 months and no petition for termination of parental rights has been filed with the court, the local board or child welfare agency shall state in its petition for a permanency planning hearing (a) the reasons, pursuant to subdivision A 1, 2, or 3 of § 63.2-910.2, why a petition for termination of parental rights has not been filed and (b) the reasonable efforts made regarding reunification or transfer of custody to a relative and the timeline of such efforts.

The code section referenced in the previously quoted statute states:

> [T]he local board shall file a petition to terminate the parental rights of the child's parents and concurrently identify, recruit, process, and approve a qualified family for adoption of the child, *unless* . . . [t]he local board has determined that the filing of such a petition would not be in the best interests of the child and has documented a compelling reason for such determination in the child's foster care plan[.]

Code § 63.2-910.2(A) (emphasis added). One such exception, noted in the current version of the statute, to the requirement that the local board file for termination of parental rights includes, if "a relative has shown the will and ability to care for the child," among other exceptions. Code § 63.2-910.2(A)(2) (Effective July 1, 2021). The analogous federal statute contains language similar to the language in these code sections. *See* 42 U.S.C. § 675(5)(E).

reflects a proper proffer." *Massey v. Commonwealth*, 67 Va. App. 108, 132 (2016) (quoting *Ray v. Commonwealth*, 55 Va. App. 647, 649 (2010)). "The failure to proffer the expected testimony is fatal to [the] claim on appeal." *Id.* (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 367-68 (2006)). A party must proffer the "'testimony [she] expected to elicit,' rather than merely [her] theory of the case." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (citation omitted) (quoting *Clagett v. Commonwealth*, 252 Va. 79, 95 (1996)). The proffer must "[allow] us to examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion 'prejudiced' the proffering party." *Id.* (quoting *Molina*, 47 Va. App. at 368). "[E]ven when 'we are not totally in the dark concerning the nature of the evidence,' we still must 'know enough about the specifics' to be able to 'say with assurance' that the lower court committed prejudicial error." *Id.* at 22 (quoting *Smith v. Hylton*, 14 Va. App. 354, 358 (1992)). An inadequate proffer "precludes us from knowing whether any such alleged error would be considered prejudicial under harmless error principles." *Id.* at 23.

As discussed above, when dealing with matters concerning a child, such as permanency planning hearings, the paramount consideration is the child's best interest. *See Tackett*, 62 Va. App. at 328. Also stated above, subsection E of Code § 16.1-282.1 requires the trial court to consider "whether reasonable efforts have been made to achieve the permanent goal identified by the board or agency."

Here, mother's meager proffer does not allow us to determine whether Ms. Lasko's testimony was admissible or its exclusion had any prejudicial effect. Mother offered no specifics and did not proffer her questions and expected answers; rather, she proffered her "theory of the case." Mother's counsel did not specifically articulate any proposed testimony about how Ms. Lasko's suitability was different than the findings already corroborated by the record. In other words, mother's counsel did not proffer evidence that Ms. Lasko's suitability as a

placement option had changed substantively since DSS last evaluated her.  Further, the proffer fails to specifically articulate any proposed testimony about how DSS' efforts to locate relative placements fell short of the statutory requirement.  As such, mother has shown no basis to support her assertion that the trial court committed reversible error in excluding the evidence.

### III. CONCLUSION

The circuit court was not plainly wrong in changing the permanency planning goals from return to parent/relative placement to relative placement/adoption.  Mother's insufficient proffer does not allow us to determine whether exclusion of Ms. Lasko's testimony was prejudicial error.  Accordingly, we affirm the decision of the circuit court.

*Affirmed.*