COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and AtLee
Argued at Leesburg, Virginia

LAWRIE GIANNAMORE, F/K/A
 LAWRIE G. GULLION

MEMORANDUM OPINION[*] BY
v.      Record No. 0475-22-4      JUDGE GLEN A. HUFF
                                  DECEMBER 20, 2022

WILLIAM D. GULLION

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Douglas L. Fleming, Jr., Judge

Christian R. Schreiber (Michael W. Robinson; Emily C. Tifft;
Venable LLP, on briefs), for appellant.

John C. Whitbeck, Jr. (WhitbeckBennett, P.C., on brief), for
appellee.

Lawrie Giannamore ("wife") and William D. Gullion ("husband") divorced in December

2020. Their settlement agreement, incorporated in the divorce decree, required husband to pay

wife monthly spousal support.

After husband's employer terminated his employment, he asked the Loudoun County

Circuit Court (the "trial court") to modify his spousal support obligation. The trial court denied

his motion, explaining that while he continued receiving severance pay, any change in

circumstances from his termination was not material.

Once he exhausted his severance pay, husband filed another motion to modify the spousal

support. With a new judge presiding, the second trial court agreed with husband that the law of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the case doctrine made inadmissible any testimony about the voluntariness of his termination because the first trial court's ruling foreclosed further litigation on that issue.

On appeal, wife contends the law of the case doctrine did not apply, and the second trial court therefore erred in excluding evidence about a possible offer from husband's employer for husband to continue his employment for approximately the same pay. This Court agrees with wife and therefore reverses and remands.

## I. BACKGROUND

Wife and husband entered a marital settlement agreement in February 2020, which the trial court incorporated into the couple's December 2020 divorce decree. The agreement mandated that husband pay wife $5,300 per month in spousal support until March 1, 2023, when the payments would decrease to $4,900 per month.

During the parties' divorce proceedings, husband served as "Vice President of Global Shared Tech Services" for Hilton Worldwide. However, on June 19, 2020, Hilton terminated husband's employment, citing the COVID-19 pandemic. Husband received a severance package comprising "36 weeks of his annual base pay, i.e. $178,350.00."

Husband first moved to modify his spousal support obligation on November 25, 2020.[1] The motion primarily relied on husband's June 19 termination from his position with Hilton. The trial court held a hearing on that motion on December 16, 2020.[2] During husband's testimony, wife's counsel asked him: "[Y]ou were offered the opportunity by Hilton to continue to be in their employment, weren't you?" Husband replied that he received no such offer.

---

[1] Husband filed this motion after the trial on November 10, 2020, where the trial court granted the parties' divorce and incorporated the settlement agreement, but before the court issued its final order on December 4, 2020.

[2] Judge James E. Plowman presided over this hearing and signed the resulting order.

The trial court ultimately denied husband's motion to modify spousal support. In doing so, it explained:

> [H]as there been a change in circumstances? No doubt. He's terminated from his employment. His employment has arguably, I'll say arguably gone to zero and I'll tell you why I say arguably . . . . He received a severance package. The severance package I find, and I see that as an extension of income beyond . . . the termination of his employment. So in effect, . . . while he may not be employed, he received eight months of income. How he chooses to manage that eight months of income is on him.
>
> But I do find that there . . . have been multiple changes in circumstances. I just don't find them to be material right now. Because of that, primarily because of that severance agreement and that extension[] . . . [of] thirty-six months of his salary. . . .
>
> So the Court does find that there have been some changes in circumstances but does not . . . find them to be material today.

Wife's counsel then asked, "To avoid the res judicata problem that could appear, my understanding of the Court's ruling is that the Court finds that the changes in circumstances are not material for the life of the severance package, but what happens after that, the Court is not making any determination; is that accurate?"

The trial court responded, "Effectively, yes. . . . Because I'm finding basically that that's [a] continuation of his income."

After the end of the severance period, husband filed a second request to modify or terminate spousal support. The second trial court, with a different judge presiding, held a hearing on the motion on December 20, 2021.

In opening statements, wife's counsel suggested, for the first time, that wife planned to introduce evidence showing husband lied at the December 16, 2020 hearing when he denied receiving an offer to stay with his employer:

> [Husband] represented repeatedly up until very recently in his interrogatory answers that when he left his prior employer that he was not offered any alternative employment. Well, Judge, that's

actually not the truth. He was offered an opportunity to remain at the same base salary . . . [a]t a different title and a slightly lower bonus structure at a lower long-term incentive structure. But he was given the opportunity to remain, [and] he decided not to.

Later in the hearing, husband invoked the law of the case doctrine, asking the court to find, as a matter of law, that the first trial court's decision necessarily included a finding that husband's termination was involuntary.[3] In response, wife argued the previous ruling did not encompass the voluntariness of the termination. Moreover, she again claimed that husband lied in his previous testimony when he denied that he received an offer for continued employment in a different position. Wife proffered that, instead, "his direct boss offered him another opportunity" for employment, which wife described as a "very lucrative offer."

The court agreed with husband, finding that the trial court's previous decision implicitly included a finding that husband was terminated involuntarily. Accordingly, when wife tried to elicit testimony from husband's former supervisor, Matthew Richardson, about an alleged job offer husband purportedly received contemporaneous with his termination, the court ruled that the law of the case doctrine barred any evidence on the voluntariness of husband's termination. The court explained: "[I]f Mr. Richardson is going to testify that [husband] was offered a position at or before the time he was terminated, that's the law of the case, I'm going to preclude it, and sustain the objection."

Wife objected to that ruling and insisted the law of the case doctrine would not foreclose such testimony. The trial court told wife's counsel he could make a fuller proffer "at the end of the hearing," and although counsel agreed, he never did so.

---

[3] A party seeking to modify his spousal support obligation must show his inability "to pay is not due to his own voluntary act or . . . neglect." *Edwards v. Lowry*, 232 Va. 110, 112-13 (1986); *Hammers v. Hammers*, 216 Va. 30, 31-32 (1975).

At the end of the hearing, the second trial court found husband's termination, coupled with the end of his severance pay, to be a material change in circumstances and granted husband's motion to modify spousal support.[4] The court issued its final order on March 4, 2022.

Wife detailed her exceptions to the second trial court's ruling by appending a statement of objections to the final order, which included a general proffer of the testimony she had sought to elicit in the second hearing: "[T]his Court improperly excluded evidence from [husband's] former employer which would have provided that he had the opportunity to remain in the employment of Hilton at the same base salary with a modified and reduced bonus and incentive structure."

This appeal followed.

## II. ANALYSIS

### A. Wife Preserved Her Argument for Appeal

Husband asserts wife did not properly preserve her argument for appeal. Although she objected to the invocation of the law of the case doctrine, he argues, she failed to provide the trial court with an adequate proffer of the excluded evidence. Specifically, husband claims wife left out any mention that the alleged offer was at the "same salary" until she mentioned it in her objections appended to the final order, and therefore the proffer was legally insufficient. This Court disagrees.

To preserve for appeal a challenge of a trial court's exclusion of testimony, the party seeking to admit the testimony must proffer "the substance" of the testimony to the trial court. Va. R. Evid. 2:103. "The appropriate time for making [an evidentiary] proffer and the range of content required depend, in part, on the proffer's purpose." *Creamer v. Commonwealth*, 64

---

[4] The trial court's modification reduced husband's support obligation to $1,600 per month.

Va. App. 185, 195 (2015).  Generally, however, a "proffer may be made post-hearing by presenting the testimony on the record, or by an avowal by counsel, or by submitting a written account or affidavit." *Smith v. Hylton*, 14 Va. App. 354, 359 (1992).

As for the proffer's content, "'counsel and the trial court must ensure [the] proffers contain all of the information necessary' to achieve two purposes: to allow the trial court a fair opportunity 'to resolve the issue at trial' and 'to provide a sufficient record for . . . review [on appeal].'" *Creamer*, 64 Va. App. at 195 (second alteration in original) (quoting *Albert v. Albert*, 38 Va. App. 284, 290 n.1 (2002)).

Taken together, wife's multiple explanations of the alleged job offer—the substance of the testimony she sought to admit—were sufficient to preserve her argument for appeal.  At four separate points wife provided information about Richardson's testimony.  Her counsel first mentioned the point in opening statements.  Although wife's counsel did not explain at that point that wife intended to call Richardson, counsel did explain that wife would show that husband was offered a position with the same base salary and therefore lied when he testified at the first hearing that he never received an offer to stay with Hilton.

Then, once husband asked the court to hold the law of the case doctrine foreclosed any evidence on the voluntariness of husband's termination, wife's counsel responded by again arguing husband had lied in his previous testimony and that he received a "lucrative" offer to continue working for Hilton.

When Richardson took the stand and wife sought to inquire about the alleged offer, the trial court refused to allow any testimony about any job offer received at the time of the termination—regardless of the offer's content—because it believed husband's voluntariness had become the law of the case under the first trial court's ruling.

By the time the second trial court excluded Richardson's testimony, it had received "'all of the information necessary' . . . to allow [it] a fair opportunity 'to resolve the issue'"—that is, whether the law of the case doctrine precluded the testimony. *Id.* (quoting *Albert*, 38 Va. App. at 290 n.1). Any additional statement that the offer was for the "same salary" would have had no bearing on the issue of admissibility. The second trial court noted the law of the case doctrine would preclude *any* testimony on the job offer regardless of the offer's content.

Finally, wife's exceptions to the final order outlined the proffered evidence that was stricken, including that husband had been offered employment at his same salary. By that point, the purposes of a proffer were satisfied; the trial court was adequately informed, and the information was satisfactory "to provide a sufficient record for . . . review [on appeal]." *Id.* That proffer—along with the explanations before it—met the minimum requirements.[5]

Because the information wife proffered included all that was "'necessary' to achieve [the] two purposes" of an evidentiary proffer, wife preserved her argument for appeal. *Id.* This Court therefore advances to the substance of her argument.

### B. The Law of the Case Doctrine & Res Judicata

Wife's assignments of error assert the trial court erred in applying the law of the case doctrine to exclude testimony about husband's possible job offer. Husband counters that the doctrine applied, and if not, res judicata provides a separate ground to affirm. This Court concludes neither doctrine applied.

This Court considers de novo the applicability of the law of the case doctrine. *See Cole v. Commonwealth*, 294 Va. 342, 353 (2017). Under that doctrine, when "there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided

---

[5] Standards of good practice would warrant a more explicit statement of the evidence on the record as allowed by the court, but the information provided here by wife's counsel met the minimum requirements to satisfy the purposes of a proffer.

on the first appeal can be re-examined on a second appeal." *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008) (quoting *Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 620 (1917)). In other words, "[r]ight or wrong, [the previous decision] is binding on both the trial court and the appellate court." *Id.* (quoting *Steinman*, 121 Va. at 620).[6]

But the second trial court erred in applying the law of the case doctrine because the "doctrine has no binding effect on a trial court prior to an appeal." *Robbins v. Robbins*, 48 Va. App. 466, 474 (2006) (collecting cases). Nor did wife, as the prevailing party in the first proceeding, have the opportunity to appeal the first trial court's ruling. *Cromartie v. Billings*, 298 Va. 284, 306 (2020) (noting the doctrine applies to "legal decision[s] . . . unchallenged in a subsequent appeal when the opportunity to do so existed" (quoting *Kondaurov v. Kerdasha*, 271 Va. 646, 658 (2006))); *see also* Code § 17.1-405 (granting only "aggrieved part[ies]" the right to appeal to the Court of Appeals).[7]

---

[6] The doctrine applies only to those issues "actually decided by the court," or those issues "necessarily involved in the first appeal, whether actually adjudicated or not." *Miller-Jenkins*, 276 Va. at 26 (quoting *Kemp v. Miller*, 160 Va. 280, 285 (1933)).

[7] The Virginia Supreme Court noted in *Miller-Jenkins* that its

> decisions involving the "law of the case" doctrine generally have involved litigation that has proceeded in a "linear" sequence to trial, appeal, trial on remand, and second appeal, all under the same set of pleadings. However, we have never limited the "law of the case" doctrine to litigation that occurs in such sequential fashion under one set of pleadings.

276 Va. at 26. Nonetheless, the Court in *Miller-Jenkins* ultimately concluded the doctrine applied where "two cases involve[d] identical parties and issues, *and one case has been resolved finally on appeal.*" *Id.* at 27 (emphasis added). Therefore, *Miller-Jenkins* did not subvert the rule that the doctrine applies only to "legal decision[s] . . . unchallenged in a subsequent appeal when the opportunity to do so existed." *Cromartie*, 298 Va. at 306.

Res judicata provides no basis for the trial court's ruling either. Res judicata comes in two forms, but husband effectively invokes the issue-preclusion form of the doctrine, also known as collateral estoppel.[8]

"Issue preclusion bars relitigation of common factual issues between the same or related parties." *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 142 (2017). The doctrine's scope is limited. It applies only to those factual issues "actually litigated and essential to a valid and final personal judgment in the first action." *Rawlings v. Lopez*, 267 Va. 4, 5 (2004) (quoting *Norfolk & W. Ry. v. Bailey Lumber Co.*, 221 Va. 638, 640 (1980)). "Estoppel, because it concludes a party from alleging the truth, must be certain to every intent and its scope should not be extended by argument or inference." *D'Ambrosio v. Wolf*, 295 Va. 48, 58 (2018) (quoting *Gilmer v. Brown*, 186 Va. 630, 636 (1947)). Accordingly, a reviewing court must identify "the point or question actually litigated and determined in the original action; not what *might* have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." *Id.* at 56 (quoting *Eason v. Eason*, 204 Va. 347, 351 (1963)).

Although the first trial court deemed husband's termination a change in circumstances, it also found that change not material based on husband's severance pay. The court gave no other reasons for its ruling. In fact, when wife's counsel asked the court to clarify its ruling to avoid any preclusive effect from res judicata, the court repeated its holding that the change in circumstance was not material because of the severance pay. By its explicit holding, the first

---

[8] The other form, claim preclusion, dictates that "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Lee v. Spoden*, 290 Va. 235, 245 (2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Res judicata generally applies to reconsiderations of spousal support awards, but once the party moving for reconsideration of the support award convinces the court of a "material change in circumstance," that conclusion "nullifies the preclusive effect of the court's prior adjudication of support." *Head v. Head*, 24 Va. App. 166, 174 (1997) (citing *Hiner v. Hadeed*, 15 Va. App. 575, 580 (1993)). *Compare* Rule 1:6(a).

trial court never "actually . . . determined" the issue of voluntariness. *Id.* (quoting *Eason*, 204 Va. at 351).

While the first trial court also "*might* have" concluded husband's termination was involuntary, such a conclusion was not "essential to [the] judgment in the first action." *Id.* at 56-57 (first quoting *Eason*, 204 Va. at 351; and then quoting *Rawlings*, 267 Va. at 5). Instead, the court very well might have assumed husband's termination was voluntary without deciding so. But such guesswork would improperly "extend[]" issue preclusion's reach by "inference." *Id.* at 58 (quoting *Gilmer*, 186 Va. at 637). Thus, given the first trial court's explicitly cabined ruling and the limited reach of issue preclusion, res judicata did not bar further litigation on the voluntariness of husband's termination. The doctrine therefore provides no independent ground for affirming the trial court's judgment.

## III. CONCLUSION

Neither the law of the case doctrine nor res judicata foreclosed further litigation on the voluntariness of husband's termination. The trial court erred in excluding testimony on that issue, so this Court reverses the trial court's judgment and remands for reconsideration of husband's motion to modify spousal support.

*Reversed and remanded.*